## BALDRIDGE v. SUNDAY.

No. 8522—Opinion Filed Nov. 26, 1918.

(176 Pac. 404.)

1. **Jury—Issue of Fact—Ejectment.**

In an action of ejectment, notwithstanding the defense may be equitable, the defendant is entitled to a jury trial on any material issue of fact raised by the pleadings and the evidence.

2. **Vendor and Purchaser—Bona Fide Purchaser—Question for Jury.**

Generally, good or bad faith can only be established by surrounding facts and circumstances, and, in an action in ejectment in which the plaintiff claims to be a purchaser in good faith when there is evidence from which bad faith may reasonably be inferred, it is error to sustain a demurrer to evidence of the defendant and take case from the jury.

2. **Same—Bona Fide Purchaser — Forged Deed.**

A forged deed is void, and the same, though recorded in due form, is ineffective as a muniment of title even as to subsequent purchasers in good faith for value without notice.

(Syllabus by Stewart, C.)

Error from District Court, Nowata County; W. A. Chase, Special Judge.

Action by William E. Sunday against Ellen Baldridge. Judgment for plaintiff, and defendant brings error. Reversed and remanded for a new trial.

A. Carey Hough, for plaintiff in error.

Ray K. Hart and Adams & Wills, for defendants in error.

Opinion by STEWART, C. The plaintiff brought action in ejectment against defendant setting up title to 50 acres of land, being the original allotment of William Mabry, a freedman citizen of the Cherokee Nation, who died on December 25, 1905, without issue, leaving as his sole surviving heir, his mother, Ellen Baldridge, nee Mabry, from whom alone deceased derived his right to Cherokee citizenship; his father being Thomas Mabry, a noncitizen. It is alleged that, after the death of William Mabry, his said mother conveyed the land to one John J. Bogard, under whom by deed of conveyance the plaintiff claims title. Defendant, Ellen Baldridge, alleges that on September 1, 1909, she was the owner of the land described as

the sole heir of William Mabry, deceased; that, after the death of her son, one Charles W. Mandler offered to buy her interest in the land, leading her to believe, after he had made some pretended calculations, that she had only a one-seventh undivided interest, and further representing to her that, under the law, her husband and five minor children inherited the remaining six-sevenths and that he (Mandler) would purchase the interests of the minors as they became of age; that such representations were false, but defendant, believing them to be true, agreed to convey her interest in said Charles W. Mandler for the sum of $75; that the defendant was at the time and now is illiterate and inexperienced in business, being unable to read or write; that she authorized the signing of her name to a deed read to her at the time conveying only a one-seventh interest in the land to the said Charles W. Mandler and received a consideration of $75 for so doing; that she signed by mark; and that the deed attached to plaintiff's petition, which purports to be signed by her, and to convey her entire interest in the land to John J. Bogard, was not signed by her. The defendant also alleges that the land is worth $2,500, and offers in her pleadings to return the $75 received by her. She asks that plaintiff take nothing, and that all deeds purporting to convey title be canceled, and she is held to have title to all of said land.

The plaintiff did not offer in evidence any of the original deeds, claiming that the same were lost, but offered the records of Nowata county showing a purported deed by Ellen Baldridge conveying her entire interest in the land to John J. Bogard for "one dollar and other valuable consideration"; also, a deed from John J. Bogard to William E. Sunday, the plaintiff, in consideration of "one dollar and other good and valuable consideration"; also, deed from William E. Sunday to Sarah J. and John G. Smith in consideration of $1,500; and a later deed from Sarah J. Smith and John G. Smith to William E. Sunday in consideration of $1,500. The allegations in defendant's answer are fully supported by her testimony, which is corroborated by that of other witnesses, including her son, Tom Mabry, and Henry Pack, who were present when the transactions took place; Henry Pack being at the time employed by Mandler. The evidence offered by defendant shows she was an ignorant and illiterate negro; that the deed she executed conveyed a one-seventh interest to Charles W. Mandler; that the name of John J. Bogard was never mentioned; that she could not write, and Mandler wrote her name, she touching the pen in making her mark; that she did not part with possession of the land; that she relied on Mandler's representations as to her interest in the land; that she did not intend to convey the entire interest, and would not have agreed to make a deed to the one-seventh interest if she had been aware of her right; that she did not sign the deed which was introduced, or authorize the signing of the same. The plaintiff offered no evidence tending to show a different state of facts, but relied upon his claim of being an innocent purchaser for value. At the close of defendant's testimony, the plaintiff demurred to the same for the reason "that the testimony is insufficient to sustain the allegations in the answer and cross-petition," and moved the court to instruct a verdict for the plaintiff. The demurrer was sustained, the jury discharged, and judgment rendered for the plaintiff.

It is admitted that Ellen Baldridge was the sole heir of William Mabry, who died seised with the title to the land. Under the uncontradicted evidence, the defendant was entitled to have the deed made by her to John J. Bogard canceled. The important question, however, to be determined, is her right as against the plaintiff who claims to be a bona fide purchaser for value. There is sufficient evidence to show fraud in obtaining the deed, and the only testimony in the case that the plaintiff was a purchaser in good faith is his statement to such effect, and that he paid $250 for same, after examining the abstract. The evidence, however, discloses that the land in controversy was worth $2,500; that plaintiff was engaged in the real estate business extensively, buying and selling lands, Mandler being engaged in the same business, both being familiar with titles, lands, and values in that section of the state; that the defendant was in the possession of the land; that the consideration expressed in the purported deeds from defendant to Bogard and from Bogard to Sunday was nominal, which plaintiff must have known, as he says he examined the abstract before the purchase; that, shortly after plaintiff purchased the land, he conveyed the same to others for an expressed consideration of $1,500, repurchasing for a like consideration. It is generally only possible to establish good faith or bad by surrounding circumstances, and the most that can be said in behalf of the plaintiff is that, notwithstanding his testimony as to good faith, the evidence raises a question of fact as to such claim.

The action is one of ejectment brought by the plaintiff, and, though the defense is equitable in its nature, the defendant is en-

titled to a jury trial. If we were to hold in this case that, if the plaintiff was an innocent purchaser for value, his title could not be disturbed, we would be compelled to reverse the case for error of the court in sustaining the demurrer and taking the case from the jury.

But the allegations of the defendant, which are supported by uncontradicted evidence, are sufficient to charge forgery under section 2646, Rev. Laws 1910, which reads:

"Any person who, by false representation, artifice, or deceit, procures from another his signature to any instrument, the false making of which would be forgery, and which the party signing would not have executed had he known the facts and effects of the instrument, is guilty of forgery in the second degree."

In the syllabus of First National Bank et al. v. Wade, 27 Okla. 102, 111 Pac. 205, 35 L. R. A. (N. S.) 775, Mr. Justice Kane of the court said:

"Where an illiterate colored woman over 70 years of age was by false and fraudulent representations induced to sign certain negotiable promissory notes and mortgages securing the payment of the same under the belief that she was signing her last will and testament and a power of attorney, such promissory notes are unenforceable in the hands of a bona fide holder; it appearing that the maker was free from negligence."

It is also held in Chickasha Loan & Trust Co. v. Mills, 59 Okla. 230, 158 Pac. 1156, an opinion by Mr. Commissioner Clay, that:

"Where a Seminole freedman, who is unable to read and write, without negligence upon his part, is induced to sign an instrument which is fraudulently represented to him to be a mortgage, and which fraud and deceit amounts to larceny under the laws of the Indian Territory, such deed is void and confers no title upon the innocent purchaser of the land without notice."

Under the statutes of Oklahoma, section 2646, supra, the same acts constitute forgery. The pleadings and the evidence in the instant case are also sufficient to support forgery under the general statute defining such crime.

If the purported deed was obtained by forgery, the contention of the plaintiff as to his good faith could not avail, as the deed would be absolutely void and, though recorded in due form, would be ineffective as a muniment of title for any purpose even as to a subsequent purchaser in good faith for value without notice.

The judgment is reversed, and the cause remanded for a new trial.

By the Court: It is so ordered.