**JULIA OIL & GAS CO. v. COBB.**

No. 15609—Opinion Filed Feb. 1, 1927.

Rehearing Denied Jan. 10, 1928.

(Syllabus.)

1. **Limitation of Actions—Cause of Action Accruing in Indian Territory Prior to Statehood.**

The statutes of limitation, as they appear in Mansfield's Digest of the Statutes of Arkansas, control the commencement of all actions, real or personal, where the cause of action accrued prior to November 16, 1907, in that part of the state formerly comprising the Indian Territory.

2. **Same—Arkansas Statutes—Effect of Status as Feme Covert.**

Although the limitation in ejectment actions, under section 4471, Mansfield's Digest of the Statutes of Arkansas, is seven years, yet, under the proviso of said section, one who was a feme covert at the time such cause of action first accrued, may, notwithstanding said seven years may have expired, bring her suit or action within three years next after discoverture.

3. **Acknowledgment—Evidence to Impeach Certificate.**

The presumption in favor of the certificate of a notary public in the acknowledgment of a deed does not obtain where the evidence is clear, cogent, and convincing that the certificate is false.

4. **Vendor and Purchaser—Holder Under Forged Deed not Innocent Purchaser.**

One holding under a forged deed cannot claim any protection against the title of the grantor named in such deed on the ground that he is a bona fide purchaser, and a deed is a forgery in this sense where by artifice the grantee induces the grantor to sign it under the belief that it was another and entirely different instrument.

Error from District Court, Tulsa County; Albert C. Hunt, Judge.

Action by Annie Cobb against the Julia Oil & Gas Company, a corporation, F. M. Davis, the Illinois & Oklahoma Company, a corporation, B. F. Norvell, and Raford Davis. Judgment for plaintiff, and defendant Julia Oil & Gas Company appeals. Affirmed.

Geo. S. Ramsey. Edgar A. de Meules, and Villard Martin, for plaintiff in error.

Creekmore Wallace, for defendant in error.

MASON, V. C. J. This suit was commenced by Annie Cobb on May 8, 1916, to recover certain real property which was the allotment of her deceased illegitimate daughter, of whom she was the sole heir. The petition contained two causes of action; the first being an action in ejectment, in which she claimed the right of possession by reason of ownership as the sole heir of the deceased allottee. In the second cause of action it was alleged that the defendant held possession under and by virtue of a deed, executed by the plaintiff, which was obtained by such fraudulent acts

as to amount to forgery. In the second cause of action she prayed judgment canceling, vacating, and setting aside said deed, as well as certain other deeds and leases. The cause was tried to the court without the intervention of a jury, and judgment was rendered for plaintiff, as prayed for, from which the Julia Oil & Gas Company appeals.

The facts in the case, as disclosed by the record, are, substantially, as follows:

That the land involved herein, consisting of 160 acres, was allotted to Mattie Davis, a freedman citizen of the Creek Nation, who died in the year 1900, and that Annie Cobb, the plaintiff, was the mother of said Mattie Davis; that the principal deed in controversy was executed March 27, 1907, by Annie Cobb to B. F. Norvell, who was the agent of J. Garfield Buell, who, on the same date, transferred it by deed to the Julia Oil & Gas Company, for a recited and real consideration of $2,000. It appears that the deceased, who died in infancy intestate and without issue, was the illegitimate daughter of Raford Davis and Annie Cobb, nee Harrad, and that the mother was her sole heir.

The evidence on the part of the plaintiff, Annie Cobb, also discloses that early on the morning of March 27, 1907, one Green Smith, an agent of J. Garfield Buell, and Ed Jefferson, a notary public, both negroes, at the request of the said Buell and under his instructions to get a deed from the said Annie Cobb, a negress, to the land in question by any means, with money furnished to Green Smith by J. Garfield Buell, and with liquor bought with his money and, at his direction, and with an oil and gas lease and a deed conveying said lands, already filled out in his office in the presence of Ed Jefferson and Green Smith, went from Muskogee to the home of Annie Cobb, which was a few miles west of Muskogee, to get her deed to said lands.

None of this evidence appears to be denied by any witness. It was testified to by Green Smith, through depositions read in the presence and hearing of J. Garfield Buell on the trial of the case, who afterwards testified in the cause, and who denied none of said testimony.

It further appears, without conflict, that these two negroes, Smith and Jefferson, arrived early in the morning at the home of Annie Cobb, where she and her husband were still in bed; that after drinking some intoxicating liquor, they all had breakfast. They remained at the Cobb home until about five o'clock in the afternoon, where they all imbibed, from time to time, intoxicating liquor, taken to the Cobb home by Green Smith.

It further appears that Green Smith, on this as well as previous occasions, talked to Annie Cobb about a deed to said lands, but that she refused to make the same: that on this occasion he then proposed that he lease the land from her, and she agreed to give him an oil and gas lease, but declined to sell the land. During the afternoon, according to the testimony of Green Smith, and Annie Cobb, she signed what Green Smith told her was a lease to be executed by her in duplicate—one as a commercial lease and the other as a departmental lease. She also signed some papers authorizing J. Garfield Buell to administer the estate of the deceased allottee. All of the persons present agreed in their testimony that Annie Cobb at all times refused to make a deed or to sell the premises. It also appears that after she had signed these papers, her husband, Mack Cobb, called her brother, L. W. Saunders, who resided a few hundred yards distant, to look over the papers for her, since Mack Cobb, the husband, could not read nor write.

The testimony shows that Saunders looked at the top of a paper which Green Smith said was an oil and gas lease on the Mattie Davis allotment and saw at the top that it was labeled "oil and gas lease"; that he did not read that or any other paper held by Smith; that Green Smith told him that it was an oil and gas lease executed by his sister; that no mention of a deed was made by Green Smith, or anyone else on that occasion.

Green Smith also testified that before he and Ed Jefferson, the notary public, left Buell's office that Buell prepared both a deed and a lease to be executed by Annie Cobb; that Buell furnished the money with instructions to take a little whisky along. Smith also testified that he read the lease to Mack and Annie Cobb twice and had them sign both the deed and the lease, but that he told them they were signing an oil and gas lease on the property and that they thought they were executing a lease.

Smith also testified that the lease and the deed were the same size and that he laid them on the table with the lease a little above the deed and told them to sign in two places, which they did, placing one signature on the deed and one on the lease. His testimony was that he paid them $100 or $150. The testimony of Annie Cobb is that she received $150 for an oil and gas lease. The undisputed evidence on behalf of

plaintiff was that the land at that time was worth $10 per acre, or $1,600.

None of the foregoing testimony was denied by anyone and it is the testimony of all the persons who were present at the immediate transaction.

Ed Jefferson, the notary public, also testified by deposition, in which he stated that he was employed by Green Smith to go with him to the home of Annie Cobb to take an acknowledgment and that he took the acknowledgment of the deed and also an affidavit made by Annie Cobb at the same time. He further testified that he was not in the house at the time the instruments were signed and did not hear much of the conversation between the parties. To use his own language, he was "transporting in and out." He testified that he asked Annie Cobb if she knew what she was signing and that she said she did, but that he did not read the instrument to her.

The record further discloses that, about 18 months after the date of said instruments, other parties came to the home of Annie Cobb for the purpose of securing an oil and gas lease on said lands and that Annie Cobb informed them that the land had been leased for about 18 months, but that no rental had been paid and that said lease had no doubt been abandoned. These parties then examined the records and discovered the deed involved herein and informed Annie Cobb of the same. She sought the services of an attorney and commenced an action to cancel said deed. After much delay, the case was dismissed and she thereafter secured the services of another attorney and commenced a second action, which was also dismissed. Thereafter, the instant action was commenced. The trial court, in his findings, found that the failure to prosecute the first two causes was not due to any fault of Annie Cobb, but to the failure of her attorneys to carry out their contracts of employment.

The trial court also found that the deed under consideration was procured by J. Garfield Buell and his agents by fraud and misrepresentations, knowingly made by the persons procuring said deed: that these representations were believed by plaintiff and acted upon to her loss and detriment in this, to wit:

"That the said persons acting for the said J. Garfield Buell and the said B. F. Norvell pretended and represented to the plaintiff at the time that she was signing an oil and gas lease on the said land and by virtue of fraud and misrepresentation and by ex-

hibiting to the plaintiff an oil and gas lease and by trick and artifice amounting in law to forgery in the second degree and by covering the said warranty deed with an oil and gas lease and by other devices and manipulations of said instruments at the time of the signing of the same, the said persons procured from the plaintiff her signature to said warranty deed; that the making of this signature to said warranty deed was unknown to the plaintiff at the time; that the persons so procuring said signature by said fraud, trick, and artifice intended at the time to cheat the plaintiff out of said tract of land; that the plaintiff was actually deceived thereby and would not have signed said instrument had she known that the same was a warranty deed, but that she relied upon the representation and upon the presentation to her of said oil and gas lease which she signed, and that she received therefor the sum of $150, which she took as payment for an oil and gas lease; * * * that the land at the time was worth the sum of $1,600. * * *"

For reversal of the judgment of the trial court, the plaintiff in error insists that the trial court erred in not sustaining its demurrer to the plaintiff's petition for the reason that the same was barred by the statutes of limitation as provided in Wilson's Statutes of the Territory of Oklahoma; as provided in the statutes of Oklahoma and as provided for in Mansfield's Digest of the Statutes of Arkansas. We deem it unnecessary to discuss either the statutes of the territory of Oklahoma or the statutes of Oklahoma, as the transaction involved herein took place in the Indian Territory prior to statehood. The statutes of the territory of Oklahoma were never in force and were never applicable to the Indian Territory. Neither would the statutes of the state of Oklahoma be applicable, as the rule is well settled that an action brought in the courts of this state upon a cause of action which accrued in the Indian Territory prior to statehood is governed, as to the time in which an action thereon will be barred, by the laws in force at the time said action accrued. Patterson v. Rousney, 58 Okla. 185. 159 Pac. 636; Davis v. Foley, 60 Okla. 87: 159 Pac. 646; Maine v. Edmonds, 58 Okla. 645, 160 Pac. 483; Bilby v. Diamond. 71 Okla. 40, 174 Pac. 758.

In Rowe et al. v. McIntosh, 101 Okla. 299, 225 Pac. 948, this court announced the rule as follows:

"The statutes of limitation as they appear in Mansfield's Digest of the Statutes of Arkansas, control the commencement of all actions, real or personal, where the cause of action accrued prior to November 16, 1907,

in that part of the state formerly comprising the Indian Territory."

Under section 4471, Mansfield's Digest of the Laws of Arkansas, which were in force in the Indian Territory on March 27, 1907, the date of the alleged forged deed, the limitation in ejectment actions is seven years. Said section provides, however, notwithstanding seven years may have expired, a married woman may bring said action any time within three years next after discoverture. The undisputed record in this case is that the plaintiff was, at the time said deed was executed and still remained at the time the instant action was commenced, a married woman, and, therefore, the plaintiff's cause of action was not barred by the seven-year statute of limitation, as provided for in section 4471 (supra).

Counsel for defendant in error cites many authorities and devotes a large portion of his brief in support of his contention that this is a law action and that, inasmuch as there is competent evidence reasonably tending to support the judgment of the trial court, the same should be affirmed. On the contrary, counsel for plaintiff in error cite many cases and devote a large portion of their brief in support of the theory that this is an equity case and that it is, therefore, the duty of this court to weigh the evidence and reverse the judgment of the trial court as being contrary to the clear weight of the evidence.

Plaintiff in error also urges that before the plaintiff was entitled to judgment in the trial court she had the burden of impeaching the certificate of the notary public and that the evidence in such cases should be clear, cogent, and convincing that the certificate is false, and in support of such contention cites Dyal v. Norton, 47 Okla. 794. 150 Pac. 703, and many other cases which support said rule. It is then insisted that plaintiff's evidence does not meet this requirement. The reasons for this rule are obvious. It is essential to the security of land titles. If the solemn deed to real estate, duly attested by a public officer and recorded according to law, may be avoided by the grantor's individual oath or by anything short of clear and convincing evidence, the efficacy of the recording statutes would be practically destroyed and the title to such property would be precarious indeed. Public policy, as well as individual security, require that the ownership and peaceful possession of land should be subjected to no such hazard, unless the evidence be clear, cogent. and convincing. On the contrary, however,

where the evidence meets this test, no individual should be deprived of his property by means of such unscrupulous and fraudulent acts as amount to forgery.

As we view this case, it is immaterial whether it be treated as a law action or as a suit in equity. We have seldom read a record which disclosed such a premeditated and deliberate attempt to steal the lands of another as is disclosed herein.

Conceding that this be an equity case, we could not say that the judgment of the trial court is contrary to the clear weight of the evidence, and, therefore, under the well-established rule of this court, it would be our duty to affirm the judgment of the trial court. Conceding, further, that the plaintiff in the trial court had the burden of impeaching the certificate of the notary public, yet, we are of the opinion that the evidence met the test and was clear, cogent, and convincing that the plaintiff never, knowingly. executed and acknowledged the deed of March 27, 1907, but that her signature was obtained thereto by such means as amounted to forgery.

The evidence shows that the Julia Oil & Gas Company bought said land from B. F. Norvell and J. Garfield Buell without any notice or knowledge of the method pursued by Buell and Norvell in securing their deed from Annie Cobb, and that it paid a consideration of $2,000 for the same.

This, however, can avail the plaintiff in error nothing. If the deed of its grantors was obtained by forgery, it would be absolutely void and, though recorded in due form, would be ineffective as a muniment of the title for any purpose even as to a subsequent purchaser in good faith for value without notice. Baldridge v. Sunday, 73 Okla. 287, 176 Pac. 404.

In the case of Turner v. Nicholson. 115 Okla. 56, 241 Pac. 750, the facts and the issues were very similar to those in the instant case, and Commissioner Foster announced the rule as follows in the third paragraph of the syllabus:

"One holding under a forged deed cannot claim any protection against the title of the grantor named in such deed on the ground that he is a bona fide purchaser, and a deed is a forgery in this sense where by artifice the grantee induces the grantor to sign it under the belief that it was another and entirely different instrument."

Keeping in mind the fact that trial courts, which have an opportunity to see the witnesses in person and to observe their demeanor and their apparent interest or lack

of interest in the outcome of the case, should proceed very cautiously in cases of this kind, to the end that the stability of land titles be not disturbed, and after considering all the facts and circumstances as disclosed by the record herein, we are forced to the conclusion that the findings and judgment of the trial court are not clearly against the weight of, but are amply supported by the evidence, which, in our opinion, is clear, cogent, and convincing that the plaintiff's signature to the deed in question was secured under such circumstances as to amount to forgery.

The judgment of the trial court is, therefore, affirmed.

HARRISON, PHELPS, LESTER, CLARK, and RILEY, JJ., concur.

HEFNER, J., concurs in the conclusion, but is of the opinion that the decision should be based upon fraud instead of forgery, and that the deed from Annie Cobb to B. F. Norvell is voidable and not void.

HUNT, J., having tried the case in the trial court, disqualified and not participating.

Note.—See under (1) 37 C. J. p. 729, §46. (2) 37 C. J. p. 1015, §412. (3) 1 C. J. p. 898, §284; 1 R. C. L. p. 297; 1 R. C. L. Supp. p. 93; 5 R. C. L. Supp. p. 20; 6 R. C. L. Supp. p. 14. (4) 18 C. J. p. 224, §138; 39 Cyc. p. 1691; 27 R. C. L. p. 674.