## KLINE et al. v. MUELLER.

No. 18333. Opinion Filed July 31, 1928.

Withdrawn, Modified, and Refiled Feb. 12, 1929.

E. C. Stanard, M. L. Hankins, and Guy A. Curry, for plaintiffs in error.

E. D. Means, R. Emmett Stewart, and Chetlain, Meagher & Chetlain, for defendant in error.

TEEHEE, C. On August 6, 1923, Carrie Mueller, as plaintiff, brought suit to quiet her title to 480 acres of certain lands situated in Haskell county. The suit was against M. Kline and Conservative Loan Company, a corporation, and its receivers, A. J. Fluke and C. E. Bowley, as defendants. In her petition, by appropriate pleadings, plaintiff alleged ownership in fee and possession of the property, and that each of the defendants claimed some adverse interest therein; that the defendant M. Kline's claim of interest was founded on a warranty deed dated May 6, 1919, and a quitclaim deed dated June 16, 1920, both executed by one Julius Mackson without right or authority; that the defendant Conservative Loan Company's claim of interest was founded on a mortgage for $2,000 dated May 23, 1917, executed by one Owen L. Carr, without right or authority; which claims of interest constituted clouds upon plaintiff's title. Plaintiff prayed that each of said defendants be required to set forth the nature of their respective claims of interest in said property, and that plaintiff's title be quieted thereagainst. On November 23, 1923, the defendant Conservative Loan Company entered and filed its disclaimer of interest.

Before service of process, the defendant M. Kline departed this life, whereupon by motion of plaintiff, on May 23, 1924, Jennie Kline, administratrix of M. Kline, deceased, and Jennie Kline, Dora Stien, nee Kline, Sarah Kline, Samuel Kline, and Harry Kline, heirs of decedent, were made parties defendant: and, thereafter, on May 4, 1925, one J. C. Newcomb, as guardian, but for whom it does not appear, was also made a party defendant.

On November 10, 1924, the defendant administratrix and heirs of the estate of decedent filed their answer and cross-petition, in which they denied generally and specifically that plaintiff is the owner of the property involved and in possession thereof, but that if plaintiff be in possession, the same is wrongful. They further answered by admission of the claim of interest of M. Kline, deceased, and deraigned title as follows:

That the property originally was unallotted lands of the Choctaw and Chickasaw Nations, and was sold by the Department of the Interior pursuant to authority of Congress, on November 16, 1914, to Louis R. Mueller, in three separate tracts, numbered, respectively, 71, 75 and 76, and each comprising 160 acres, the first being sold for $416, the second for $560, and the third for $456; that on March 7, 1917, the original purchaser, Louis R. Mueller, sold said property by warranty deed to Eric Hanson, at which time there was an unpaid balance of $52 of the purchase price on tract No. 71, $70 on tract No. 75, and $57 on tract No. 76, and said conveyance being subject to the balances of such unpaid purchase price; that on April 10, 1917, Eric Hanson and Bertha B. Hanson, his wife, transferred the said property by warranty deed to Martin L. Benson, subject also to the unpaid balance of the original purchase price; that on May 1, 1917, Martin L. Benson transferred said property by warranty deed to Owen L. Carr subject also to the unpaid balances of the original purchase price; that on May 23, 1917, Owen L. Carr executed a mortgage on said property in the sum of $2,000 to the Conservative Loan Company, which was still in force and effect, and out of the proceeds of said mortgage the balances of the original purchase price were paid, and thereupon, on June 7, 1917, a receipt for such final payments was issued by the Department of the Interior to the Conservative Loan Company; that said defendant's ownership to said property was acquired immediately through the said warranty deeds and quitclaim deeds dated May 6, 1919, and June 16, 1920, respectively described in plaintiff's petition and executed by Julius Mackson to said decedent, M. Kline, the title thereto having by prior and mesne conveyances passed from said Eric Hanson, and thus become vested in the estate of said decedent M. Kline, by and through whom the said defendants inherited the said property; that all of the conveyances referred to were regular on the face thereof and executed in due form of law and of record, of which facts said plaintiff was charged with notice, and that, having stood by for a long period, plaintiff was guilty of laches and was now estopped from challenging the validity of defendants' manner of their acquisition and ownership of said property. Defendants thereupon prayed affirmative relief in that their title to said premises be quieted against the claim of ownership of plaintiff.

On May 4, 1925, the defendant J. C. Newcomb, guardian, filed his answer and cross-

petition, which, in substance and effect, was the same as the answer and cross-petition filed by his codefendants, and further answered that he, as guardian, by assignment dated June 16, 1917, acquired from the Conservative Loan Company the said note and mortgage of $2,000 executed to it by the said Owen L. Carr; and that he as said guardian was then the holder of the note and mortgage security; that the note matured on June 1, 1924, and was, together with the matured interest, unpaid; whereupon he prayed for judgment establishing said indebtedness and said mortgage as a valid and subsisting lien upon said property, and for foreclosure thereof.

On July 16, 1925, plaintiff, by replication, denied any and all new matter set up in the answer and cross-petition filed by the defendants, administratrix and heirs of the estate of M. Kline, deceased, and further replied that possession of the said property was continuous from the time of purchase as unallotted lands of the Choctaw and Chickasaw Nations by her deceased husband, Louis R. Mueller, to the time of his death on December 19, 1921, and since said time has been in plaintiff's possession by right of inheritance under a devise of said decedent. Plaintiff further specifically denied the execution of the warranty deed to said Eric Hanson, and that if such deed was existent, the same was a forgery and conveyed no interest in the property to said Eric Hanson, by reason whereof the claim of ownership by said defendants having been deraigned through mesne conveyances from said Eric Hanson is void; and further specifically denied that plaintiff was guilty of laches for that upon discovery of the record of the instruments relied on by defendants on or about July 24, 1923, through abstract of title of said property, she thereafter, within convenient and legal time, instituted this action.

There do not appear in the record any pleadings filed by plaintiff as to the answer and cross-petition of the defendant J. C. Newcomb, guardian, but it is apparent that the parties proceeded as if the same were controverted.

By stipulation, a jury was waived and the cause tried to the court and submitted for decision on March 9, 1926. On January 3, 1927, the trial court found as follows:

"First. That all the issues involved in this action are in favor of the plaintiff and against the defendants, and each of them.

"Second. The court further finds that the defendants have failed to prove the execution of the deed from Louis R. Mueller to Eric Hanson, and consequently no title in themselves to the land involved in this litigation."

Thereupon the court rendered judgment for plaintiff quieting her title in and to said property, from which judgment defendants have brought the cause to this court for review.

The controlling proposition presented by this appeal is whether or not plaintiff's evidence was sufficient to overcome the presumption of legality of the deed from Louis R. Mueller to Eric Hanson dated March 7, 1917, as shown on its face from the record thereof. The other propositions urged by defendants will be considered as contentions arising hereunder.

To sustain her right of ownership plaintiff relied on the patent issued by the government and a will of her deceased husband. The patent bore date of October 2, 1917, and was issued in the name of Louis R. Mueller, heirs, successors or assigns, and bore an indorsement showing issuance to Mrs. Louis R. Mueller. It was recorded in the federal Indian Agency at Muskogee on October 25, 1917, and filed for record in Haskell county on October 7, 1922. The will was dated May 30, 1920. The testator died December 19, 1921. The will was admitted to probate in Cook county, Ill., the then place of residence of the testator and plaintiff, on March 10, 1922, and in Haskell county, Okla., July 2, 1925. Under the will, plaintiff inherited the property. To show that she was not guilty of laches, plaintiff testified that she did not learn of any adverse claims affecting the title of the property until she had made inquiry of taxes there against in May, 1922, when she learned of the record of the Hanson deed purported to have been executed by her husband on March 7, 1917, the basic instrument relied on by defendants, which she alleged to be a forgery and thus a fraud upon her rights, and that she brought her action within the legal time in such case.

In support of her theory that her devisor did not execute the Hanson deed, it was established that the patentee, Louis R. Mueller, on May 28, 1919, paid the 1918 taxes on the property, and that between the dates of May 16, 1921, and September 6, 1921, sought through letters and an advertisement disposition of the property either by lease or sale thereof; and that the official records in the office of the Secretary of

# 126

State of Illinois did not show that the notary public acknowledging the execution of the Hanson deed, who certified he was a notary public in and for LaSalle county, state of Illinois, was such notary at the time of the execution thereof.

Defendants, to establish their right of ownership, relied solely on the record of the Hanson deed and subsequent conveyances, including the one from their immediate grantor, and the payment of certain items representing the unpaid balance of the original purchase price by the Conservative Loan Company on June 7, 1917, and the payment of the 1919 taxes by M. Kline on May 21, 1920, and the 1922 taxes on November 20, 1922. Explanatory of their failure to produce the original Hanson deed, and the other instruments, one of defendants' counsel testified that he made efforts through inquiries of other attorneys interested with him as to the whereabouts of the parties appearing in the conveyances constituting defendants' chain of title, and to secure the original instruments, but failed to locate either the parties or to find such original papers.

Considering defendants' contentions in proper sequential order, we first notice the point that the trial court erroneously placed on defendants the burden to establish that the Hanson deed was not a forgery. The point does not arise on any ruling of the trial court upon the order in which the parties presented their evidence, but appears to be based on the court's finding that defendants failed to prove the execution of the deed in question. The course of the trial as shown by the record, it may be said, was substantially the statutory order, with the parties having a fair opportunity to present all the evidence at their command. It need not be said, of course, that the court's finding was not made until after all the evidence was introduced and after submission of the cause thereupon, hence, in no view can it be successfully contended that the finding giving rise to the contention was tantamount to and operated as a ruling of the court upon the question as in the course of presentation of the evidence, which was necessary to raise the point urged. Even so, in the circumstances of the case, the point would be groundless, for as said in Quinton v. Kendall, 122 Kan. 814, 253 Pac. 600:

"Where each party to a lawsuit had a fair opportunity to present all his evidence, the question as to which litigant had the burden of proof is immaterial, unless the trial court's ruling thereon shifts the risk of non-persuasion from the litigant who must bear it in order to prevail in the action."

In the cause at bar, there was but an orderly shifting of the burden of evidence or order of proof from one to the other as the trial progressed which the parties undertook to meet, and without complaint. The contention, therefore, is without basis, by reason whereof we dismiss the matter from further consideration.

Defendants next contend that the court erred in admitting in evidence plaintiff's exhibits referred to, consisting of carbon copies of letters and the advertisement, for that they did not show their relationship to the property involved by a specific description thereof, and that they were self-serving. The matter complained of was found by plaintiff among the effects of her deceased husband. They were sufficiently descriptive of the property in controversy to clearly indicate a reference thereto, and showed acts of asserted ownership subsequent to the Hanson deed, the principal instrument relied on by defendants. In Haight v. Vallet, 89 Cal. 245, 26 Pac. 897, 23 Am. St. Rep. 465, the court held:

"In determining whether the plaintiff's ancestor executed and acknowledged the deed which was claimed to be forged, the jury had a right to consider the subsequent conduct of the ancestor, and whether he ever, after the date of the deed, claimed the property or its possession, or paid the taxes or street assessments, or asserted ownership over it in any manner."

As the evidence complained of constituted a repetitive assertion of ownership of the property subsequent to the date of the deed of plaintiff's devisor, which was claimed to be a forgery, it was competent and admissible as tending to refute execution and acknowledgment of the conveyance.

Defendants next urge that, as a notary public in the state of Illinois is empowered to take acknowledgments to the execution of instruments in any county of the state, the evidence in impeachment was insufficient to overcome the presumption of validity of the Hanson deed, in that it was not shown that the acknowledging officer was not a notary public for any of the other counties of the state. This first requires a brief resume of the evidence material hereto in order that we may have in mind the state of the case in that relationship in the further course of our consideration hereof. The deed on the face of the record thereof showed Louis R. Mueller to be a single man; that he transferred the property in exchange for other

property; that he executed the same in La-Salle county, state of Illinois; that it was acknowledged before James C. Blake, who certified that he was a notary public in and for LaSalle county. These facts presumptively established the regularity and validity of the instrument. In impeachment of the deed the proof was that the grantor was a married man, and lived in Cook county, Ill.; that his wife, the plaintiff, always joined in the execution of conveyances; that she knew of no property received in exchange: that her husband had not been in LaSalle county; that the grantor had paid certain taxes on the property, and that there were other acts of asserted ownership subsequent to the date of the deed; that the office of Secretary of State was the repository of appointments and commissions of notaries public, and that the records of that office did not show that James C. Blake was a notary public in and for LaSalle county at the time of the execution of the Hanson deed. Defendants offered no evidence contradictory of nonmagistracy.

In the presentation of the point the parties have proceeded on the theory that the proposition must be tested under the relevant law of the state of Illinois, which, though not pleaded, was testified to by an officer of the Executive Department in the office of the Secretary of State of Illinois. Proceeding likewise, we may pass over such parts of the evidence with respect to the nonappearance of the patentee in LaSalle county and other minor phases, as the proposition goes principally to the evidence showing that at the time of the execution of the Hanson deed there was no one by the name of James C. Blake commissioned as a notary public in the county of venue designated in the certificate of acknowledgment.

Defendants' contentions hereunder are grounded on the theory that, as the relevant law authorizes a notary public to take acknowledgments to the execution of instruments at any place in the state, the fact that his certificate fixed the place of venue as LaSalle county did not indicate that he was commissioned as such officer for that county, and from that premise they reason that as James C. Blake may have been a notary public for one of the other counties of the state, and the evidence not showing otherwise, the same was thus insufficient to overcome the prima facie force of the notary's certificate otherwise showing his official capacity as an officer of the state of Illinois.

The law relative to notaries public is contained in chapter 99, 1927 Revised Statutes of Illinois. With respect to appointment and commission of notaries public in that state, the law in application and administration is practically the same as our own law upon the subject, except with respect to authority of a notary to act throughout the state. The provision, in that particular, is as follows:

"A notary public duly qualified shall have authority, while he resides in the same county which he is appointed, to execute the duties of his office throughout the state." Section 10, chapter 99, supra.

Section 27 of chapter 30, 1927 Revision, provides the form of the certificate of the acknowledgment to a deed, which requires the name of the county and the official title of the acknowledging officer to be contained therein, and which, among other requisites, is said by the court in Kitterlin v. Milwaukee Mechanics' Mutual Insurance Co., 134 Ill. 647, 25 N. E. 772, 10 L. R. A. 220, to be essential. From the form of the certificate of acknowledgment by the statute required, it would appear to be undoubted that where a deed was acknowledged in one county by an officer of another county, it would be necessary to show such facts in the certificate of acknowledgment. The case of Gertin v. Mombleau, 144 Ill. 32, 33 N. E. 49, cited by defendants in support of the theory by them advanced, does not determine the point, as the certificate of acknowledgment there showed on its face that the official act was performed in one county by a notary public of another county, hence the case was but a confirmation of such requisites in respect thereto, if that were needed.

Robinson v. Cooper, 115 N. Y. S. 599, involved the construction of a statute whereunder a notary public, with respect to certain official acts, was authorized to perform the same outside of the county of his appointment, and it was held that where that was the case, such fact should so appear in the certificate of the officer. Reeves & Co. v. Columbia Savings Bank, 166 Iowa, 411, 147 N. W. 879, involved the sufficiency of a certificate of acknowledgment by a notary public which on its face showed the name of the county but lacked an essential of the statute in that it did not appear from the certificate that the acknowledging officer was such of the county named. There the law provided that a notary public may file a certified copy of his appointment in a county adjacent to that of the county of his appointment, whereupon he would be authorized to perform official acts within such

adjacent county. The effect of the holding in the case was that an instrument of record which showed to be thus defectively acknowledged did not impart constructive notice. These cases support the theory that, under a statute giving a notary public authority to act officially throughout the state as is the case in the state of Illinois, when the act was performed without the county of appointment, the fact thereof must appear upon the face of the certificate. On the face of the certificate in this case there is nothing to indicate that James C. Blake was acting without the county for which he was appointed, for the caption is, "State of Illinois, LaSalle County," and he certifies that "before me, James C. Blake, a notary public in and for said county and state," appeared the grantor, who was a single man, etc. Under the elementary principle of presumption that a public official would not do an illegal act, the name of the county shown by the certificate of acknowledgment of a notary public as the county of his appointment must be taken to be true. Reeves & Co. v. Columbia Savings Bank, supra; Dunlap v. Dougherty, 20 Ill. 397; Brooks v. Chaplin, 3 Vt. 281.

This conclusion, however, is but a step toward disposal of the point as to the truth of the magistracy. By section 4, chapter 99. supra, it is provided that before the appointee enters upon his duties he shall give bond to the state and subscribe to the constitutional oath of office, both of which shall be deposited in the office of the Secretary of State. Section 5 likewise provides that he shall file with the clerk of the county for which he was appointed a memorandum of his appointment. Section 6 provides that the clerk of the county of appointment, or the Secretary of State, may grant certificates of magistracy of notaries public. Upon the question of magistracy the chief of the Executive Department of the Secretary of State's office testified that the records of that office did not show at the time of acknowledgment of the Hanson deed that James C. Blake was a notary public in and. for LaSalle county. No countervailing evidence was offered by defendants.

It is well settled in the state of Illinois that:

"The evidence to impeach the certificate of the acknowledgment of a deed must be so full and satisfactory as to convince the mind that the certificate is false or forged. A mere suspicion, or even preponderance of evidence less than sufficient to establish a moral certainty to that effect, is insufficient." Griffin .v. Griffin, 125 Ill. 430, 17 N. E. 782;

Gritten v. Dickerson, 202 Ill. 372, 66 N. E. 1090.

In Spencer v. Razor, 251 Ill. 278, 96 N. E. 300, the rule also is laid down that:

"The certificate of acknowledgment is prima facie proof of the execution of the deed, and clear and satisfactory evidence is required to overcome the force and effect of such certificate as evidence that the grantor executed the deed.".

The rule in that state is no less forceful than the rule in our own state. Fast v. Gilbert, 102 Okla. 245, 229 Pac. 275; Nickell v. Janda, 115 Okla. 207, 243 Pac. 264.

Ross v. Hole, 27 Ill. 104, was an action in ejectment in which was involved the verity of an acknowledgment to a deed purporting to have been taken by a justice of the peace. The trial court rejected a certificate of magistracy by the county clerk showing that at the time of acknowledgment, the acknowledging officer was not a justice of the peace for the county of venue. The appellate court held that this constituted reversible error. The syllabus on the point reads:

"The certificate of a county clerk, showing that A. B. was not a justice of the peace, at the date of an acknowledgment, purporting to have been taken by him, is some though not conclusive evidence of such fact."

Eaton v. Woydt, 32 Wis. 277, involved the prima facie force of a deed to lands in the state of Wisconsin purported to have been acknowledged before a justice of the peace in the city of New York in 1835. The magistracy of the acknowledging officer was certified to by the clerk of the city and county of New York, and the clerk of the court of common pleas for that jurisdiction, which certificates showed that the acknowledging officer was such in said jurisdiction at the time of the execution of the instrument, and that his signature was genuine. The adverse party introduced proof to show that at such time, under the law of New York, a justice of the peace had no such authority, and that this was not lodged in such officer until 1840. The question was whether or not the prima facie force of the deed was overcome. It was held that under that state of the record there was created a presumption that a justice of the peace did not have such authority in 1835, and that this presumption was sufficient to overcome the effect of the deed itself as prima facie evidence under the law, and thus shifted the burden of proof upon the party asserting his rights under the deed. In the syllabus the court said:

"Sec. 105, ch. 137, R. S., provided that any deed of land in this state, recorded before that statute, purporting to have been acknowledged or proved, and having upon it substantially the ordinary form of a certificate of acknowledgment or proof, purporting to have been signed by some officer in another state, should be deemed prima facie, in all legal proceedings, to have been acknowledged or proved before a proper officer, etc. Where a deed of lands in this state, produced in evidence, purported to have been acknowledged before a justice of the peace in the city of New York, in 1835, and was accompanied by a certificate of the clerk of the city and county of New York, and the clerk of the court of common pleas for said city and county, that the person who took the acknowledgment was at the time a justice of the peace in and for said city and county, and that his signature was genuine; held, that proof made by the party claiming adversely to such deed, that by the laws of New York in 1828, justices of the peace had no authority to take acknowledgments of deeds, and that in 1840 the Legislature of that state conferred such authority upon those officers, created a presumption that they did not possess it in 1835; and that this presumption was sufficient to overcome the effect of the deed itself as prima facie evidence under said sec. 105, and throw the burden of proof, as to the authority of the justice, upon the party claiming under the deed."

In Parker v. Waycross & Florida Ry. Co., 81 Ga. 387, 8 S. E. 871, which involved the question of a forged deed, it was held that a certificate from the Executive Department of the state showing that the attesting officer to the execution of the deed was not in commission at the date thereof, raised the presumption that the deed was a forgery. Upon the point the syllabus is as follows:

"In an action of trespass for entering upon land and cutting and carrying away timber, where no grant from the state was introduced conveying one lot of the land, and there was no evidence that the plaintiff was ever in possession of it, and two of the plaintiff's deeds thereto were attacked as forgeries, to sustain which attack two certificates from the executive department were introduced, showing that the persons purporting to have attested the deeds as justices of the peace were not in commission at the date of execution, and there was nothing to rebut the presumption raised by these certificates, a finding against the plaintiff's title to that lot of land was correct. * * *

"It is not required that such certificate, in order to create such presumption, should show that there was no such person in the state in commission as justice of the peace when the deed was executed."

The principle of these cases is here applicable. When it was shown by the records in the office of the Secretary of State that James C. Blake was not a notary public in and for LaSalle county at the time of execution of the deed involved, the presumption of validity accorded to the Hanson deed from the regularity of execution, as shown upon the face of the record thereof, was overcome by the evidence of nonmagistracy in the county of venue, which raised the presumption of a want of official capacity in the party purporting to have taken the acknowledgment to the instrument, and thereupon the burden shifted to defendants to offer proof in rebuttal of such presumption, and this was not done. Upon this phase of the case, therefore, we are of the opinion that the evidence in impeachment of the certificate of acknowledgment was of that quality, as by the controlling rules of law required, to carry conviction to the judicial mind that the Hanson deed, relied on by defendants as the basic instrument of their title, was a forgery, and therefore the evidence is ample to sustain the finding and judgment of the court.

The final contention of defendants in relation to the principal issue is in effect that as plaintiff was guilty of laches, she is estopped to maintain the action. This is based on the theory that defendants' ancestor, through whom they derived their title, had the right to rely upon the record title as shown by an abstract thereof, and that plaintiff's devisor was chargeable with constructive notice of the record of the Hanson deed from the time of record thereof in 1917, and of the subsequent conveyances affecting the title of the property, and his having been negligent in looking after his property, plaintiff, as his heir, cannot now be heard to complain. In other words, defendants tender the plea of an innocent purchaser for value who is entitled to the protection of the law in such case. This raises the query of the dignity of the forged deed, to determine which we return to the law of our own jurisdiction, for it is a uniform rule of law that the force and effect of an instrument of conveyance of realty must be determined by the law of the jurisdiction where the property is situated. Rorer on Interstate Law, 208; Harrison v. Weatherby, 180 Ill. 418, 54 N. E. 237; Kent v. Pallent, 75 Okla. 185, 183 Pac. 422; Sunderland v. United States, 266 U. S. 226, 45 Sup. Ct. 64, 69 L. Ed. 259. In this state the forgery of a deed is denounced as a felony. Sections 2070 and 2093, C. O. S. 1921. This has the effect of depriving a

forged deed of any legal existence or effect, and renders it a complete nullity. In Baldridge v. Sunday, 73 Okla. 287, 176 Pac. 404, it was held:

"A forged deed is void, and the same, though recorded in due form, is ineffective as a muniment of title even as to subsequent purchasers in good faith for value without notice."

In Turner v. Nicholson, 115 Okla. 56, 241 Pac. 750, paragraph 3 of the syllabus, in so far as the same is here applicable, is as follows:

"One holding under a forged deed cannot claim any protection against the title of the grantor named in such deed on the ground that he is a bona fide purchaser. * * *"

In Austin v. Dean, 40 Mich. 386, it was held:

"Good faith does not give one who holds under a forged title any rights against the person whose name has been forged, or his heirs."

See, also, Julia Oil & Gas Co. v. Cobb, 128 Okla. 260, 262 Pac. 650; McGinn v. Tobey, 62 Mich. 252, 28 N. W. 818; Gray v. Jones, 14 Fed. 83; Haight v. Vallet, supra, and Brewster on Conveyancing, p. 518, sec. 426, in further support of the rule that an innocent purchaser takes the risk of forgery. These authorities foreclose defendants' contentions relied on hereunder. Furthermore, it clearly appears that plaintiff promptly brought her suit in protection of her rights upon discovery of the record of the alleged forged deed.

Upon the whole record, therefore, we cannot say that the trial court erred in its findings and judgment thereon, for which reason the judgment of the district court is affirmed.

BENNETT, LEACH, FOSTER, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (5) 27 R. C. L. p. 674.