Pauline WIGLEY, Appellant,

v.

Max D. SKELTON, as Executor of the Estate of W. C. Wigley, Deceased, and Barbara Ann Skelton, Appellees.

No. 48853.

Supreme Court of Oklahoma.

March 7, 1978.

John C. Buckingham, McPherson & Buckingham, Oklahoma City, for appellant.

R. Burl Harris, Ada, for appellees.

BERRY, Justice.

Appellant, Pauline Wigley, was plaintiff in the trial court. Defendants in the trial court, appellees here, were Max Skelton and Barbara Skelton, son-in-law and daughter of Pauline Wigley's deceased husband, W. G. Wigley. Parties will be referred to by their trial court designations. W. G. Wigley will be referred to as decedent.

Plaintiff married decedent in 1963. By antenuptial agreement plaintiff and decedent each retained separate ownership of real property each acquired prior to the marriage. Under terms of the agreement each could keep or dispose of separate realty, and each could devise the realty as if the marriage had not taken place [subject to a homestead right created for plaintiff in decedent's separate realty].

At the time of the marriage plaintiff's real estate consisted of some rural property and a home in Ada. Decedent owned a ranch.

Decedent died in 1973. In another action his will was admitted to probate. This action was commenced prior to the conclusion of the probate.

Decedent's only devisee was his daughter, Barbara Skelton [appellee herein]. Defendant Max Skelton was executor of decedent's estate.

Plaintiff sued to recover $75,170.71 and to impress an equitable lien for that amount on the real property in decedent's estate. She claimed that her separate property had benefitted the real property left by decedent. Plaintiff claimed $68,170.71 in money she earned during the marriage, and $6,000.00 in proceeds from the sale of her former home. She claimed these items were her separate property and were used to purchase and improve decedent's ranch. Plaintiff also claimed $1,000.00 worth of her separate realty was given to a contractor in exchange for improvements upon the ranch house. Plaintiff asserted that decedent's estate and defendant Barbara Skelton would be unjustly enriched unless plaintiff were permitted to recover $75,170.71. Defendants denied liability.

At the conclusion of plaintiff's case in chief defendant demurred to the evidence. Both parties argued. The record shows the trial court was advised that defendant would stand on the demurrer. The court treated the parties' argument on the demurrer as final argument. The court then announced judgment for the plaintiff in the amount of $1,000.00 and judgment for defendants on the remaining issues. Defendants have not appealed. Plaintiff perfected this appeal.

■ In an action of equitable cognizance demurrer to the evidence is treated as a motion for judgment on the evidence. The trial court should weigh and consider all of the evidence, whether favorable to plaintiff or not, and whether introduced by plaintiff or defendants. *Bridges v. Bridges,* Okl., 544 P.2d 493; *Estate of Wilder,* Okl., 554 P.2d 788. A resultant order sustaining demurrer is treated as a final determination in the case. *Bridges,* supra.

On appeal plaintiff advances several propositions. She first argues the trial court erred in failing to find an equitable lien upon the real property in the estate of decedent. Discussion of the proposition will be dispositive of the appeal.

Plaintiff asserts that each of the ten payments made upon the ranch property, during the period including 1963 to 1972, were made by decedent using plaintiff's earnings, which she characterizes as separate property.

Plaintiff's salary as a teacher was deposited in a joint checking account. Decedent's income was apparently also deposited in the joint account. That account was used for support of the decedent and plaintiff, for expenses attributable to their cattle operation, and for other expenses for the ranch. The account was also the source of money for annual payments on the ranch mortgage.

The evidence shows that of the $22,850.39 paid on the ranch from 1963 to 1972, $16,045.39 was paid to the mortgagee from funds of Shawnee Production Credit [Shawnee], $1,000.00 was paid from decedent's separate checking account, and $5,805.00 was paid from the joint checking account of plaintiff and decedent.

During the same period Shawnee was paid $18,622.59 from the joint checking account.

 To show an equitable lien plaintiff would first have to prove her separate property was applied against the ranch indebtedness. See *Bredy v. Cantrell,* 205 Okl. 9, 234 P.2d 381. Plaintiff must show the existence of the lien by evidence which is clear, precise and unquestionable as to the intention of the parties. *Western Pennsylvania National Bank v. Brandish,* 1960, 194 Pa.Super. 126, 166 A.2d 104. See *Woodruff v. Woodruff,* 206 Okl. 3, 240 P.2d 74. Plaintiff's evidence fails to show any intention on the part of plaintiff and deceased to do other than commingle their monies.

There is no evidence to show plaintiff's separate property was involved in the ranch mortgage payments made from the joint account.

Plaintiff theorizes decedent's deposits to the joint account should first be charged with all expenses for support and for operation of the ranching business. The total of decedent's deposits to the joint account was less than the total cost of support and operation of the business. Plaintiff concludes the only money left in the joint account with which to satisfy ranch mortgage payments was plaintiff's separate property. None of plaintiff's salary was traced directly to mortgage payments.

Plaintiff cites no authority for the position that a joint checking account should be accounted for as plaintiff asserts. The evidence shows the parties commingled their money, and used the common fund both for their support and for the operation of the ranch as a going concern. We take the view that money committed to a joint checking account ordinarily loses its separate identification unless specific funds can be traced through the joint account.

We are not persuaded by plaintiff's claim that decedent gained such control of her separate property as would authorize finding an equitable lien.

The joint checking account was carried in the names of both plaintiff and decedent. Both were empowered to draw checks upon the account. Both deposited money in the account. The account was referred to as the "joint account." Plaintiff's evidence showed she enjoyed the status of an owner of the account. Absent evidence and authority showing plaintiff's funds in the joint account retained their separate character, we will not say decedent exercised control over plaintiff's separate property.

We will not speculate as to plaintiff's intention when she committed her funds to the joint account. Although plaintiff testified she expected her funds to be returned it is to be remembered that plaintiff deposited her funds to the joint account with full knowledge of the antenuptial agreement. We will not presume she had less than a competent understanding of her affairs, and of the consequences of her actions.

The $6,000.00 proceeds from the sale of plaintiff's separate real property was deposited in a joint savings account. Plaintiff and decedent were the owners of the account. Plaintiff introduced no evidence to show how the money in that account was spent. Absent a showing the money was dedicated to decedent's use, or to the reduction of the ranch mortgage, we will not say the trial court erred in refusing to grant plaintiff judgment with regard to the $6,000.00.

Except as to the $1,000.00 item plaintiff has not shown, by clear, precise and unquestionable evidence or inference, plaintiff's separate property was used to reduce the indebtedness upon decedent's separate real property. We cannot say trial court erred in sustaining defendants' demurrer to plaintiff's evidence. In light of this, discussion of plaintiff's other propositions on appeal is unnecessary.

Affirmed.

LAVENDER, V. C. J. and DAVISON, IRWIN, SIMMS, JJ., concur.

HODGES, C. J. and WILLIAMS and DOOLIN, JJ., concur in part; dissent in part.

BARNES, J., dissents.