WOODRUFF v. WOODRUFF et al.

No. 34171. Dec. 11, 1951.

Rehearing Denied Jan. 15, 1952.

Application for Leave to File Second Petition for Rehearing Denied Feb. 5, 1952.

*240 P. 2d 74.*

Robert D. Crowe, Oklahoma City, for plaintiff in error.

A. L. Hilpirt, Leslie L. Conner, Charles W. Conner, and Arnold B. Britton, Oklahoma City, for defendant in error Mary E. Woodruff.

Hal Johnson, Oklahoma City, for defendant in error Minnie L. Rost, Adm'x.

BINGAMAN, J. This action was brought by the plaintiff, John Evard Woodruff, Sr., against the defendants, M. C. or Mary E. Woodruff, E. E. or Edwin E. Woodruff, and Jack L. Tillman, to recover judgment against the defendant E. E. Woodruff, in the sum of $8,826 to establish and enforce an equitable lien upon certain real estate in Oklahoma county, and to foreclose the same, and in a second cause of action to recover the value of certain personal property, which he claimed the defendants Mary E. Woodruff and E. E. Woodruff had in their possession. Prior to the final determination of the action E. E. Woodruff died and the cause was revived in the name of his administrator, who filed an answer, in effect, a general denial. Mary E. Woodruff in her answer claimed title to the property by a deed from E. E. Woodruff to her, asserted that she had contributed a substantial sum to the purchase and improvement of the property, and further alleged that the plaintiff did not come into a court of equity with clean hands. The case was tried to the court and upon the conclusion of plaintiff's evidence the defendants demurred to the evidence, which demurrer was by the trial court overruled. Thereupon the defendants stood on their demurrer and moved for judgment. The trial court made findings of fact and conclusions of law and rendered judgment in favor of the defendant Mary E. Woodruff, holding that she was the owner of the property and denying the prayer of plaintiff's petition. Plaintiff appeals.

Plaintiff was the principal witness in his behalf. From his testimony and the admissions of his counsel it appears that his son, E. E. Woodruff, served in the armed forces in World War II,

going overseas in December of 1942 and returning in the latter part of 1945; that prior to the time the son went overseas an agreement was had between him and his father to purchase and improve the real estate involved, which was immediately adjoining the home place of the family on East 23rd street, outside the city of Oklahoma City, and that the son contributed $500 of the purchase price, which was $2,100. Plaintiff testified that he borrowed $2,000 from a sister to pay the remainder of the purchase price. Whether there was a prior contract with the owner of the property is not shown, but a deed to the property was made and delivered to plaintiff in 1944, while the son was still overseas. The sole grantee in the deed was E. E. Woodruff, and there is nothing therein to indicate that the plaintiff had any interest in the property. Plaintiff testified that he immediately took possession of the property and began to improve the same, and that he expended on improvements the sum of $8,826, which he sought in this action to recover. It further appears that prior to the time the son went overseas, he and his father, as partners, were operating an automobile salvage business, and apparently the partnership continued to exist while the son was overseas, the date of its termination not being specifically shown. Early in 1942 plaintiff filed a petition in bankruptcy, under section 75 of the Federal Bankruptcy Act (the Frazier-Lempke Act), and was duly adjudicated a bankrupt. In that proceeding he did not mention the partnership business, but claimed to be a farmer, having a lease on 90 acres of farm land and claimed all his property as exempt. He was duly adjudicated a bankrupt and was discharged in 1945. So far as the record shows he paid none of his debts. In his testimony he claimed that the property herein involved was his, and that it was placed in the name of his son because he was in bankruptcy.

In 1946 he obtained a divorce from the defendant Mary E. Woodruff, in which the parties had a property settlement which was approved by the court. Mary E. Woodruff was not represented when this settlement contract was made and executed. It provided, among other things, that each party was in possession of certain property, which property should be considered the property of the party so holding possession. Obviously, if the property, which is the subject of the present suit, belonged to the son, it would not be affected by such settlement. Prior to the divorce action, in 1946, Mary E. Woodruff had placed on record a deed to which she had signed the name of E. E. Woodruff, as grantor, purporting to convey the property involved to herself. This gave her no title to nor right in the property. Early in 1947 she moved into the property, claiming it as hers, and shortly thereafter E. E. Woodruff, who had apparently fallen in love with her, deeded the property to her by a deed in proper form, duly executed by him, which instrument recited a consideration of $1 "and a previous deed, the signature of which was heretofore authorized and signed on the 27th day of August, 1946." A little more than six months after plaintiff and defendant Mary E. Woodruff were divorced, E. E. Woodruff and Mary E. Woodruff, who were the same age, were married. E. E. Woodruff then moved into the house on the property involved and lived there until the date of his death. This action was commenced shortly after the deed from E. E. Woodruff to Mary E. Woodruff was placed of record on March 25, 1947.

In the briefs the parties urge various contentions, but we think it unnecessary to pass upon and determine them. This for the reason that in our judgment the decisive question presented is whether the findings and judgment of the trial court are clearly against the weight of the evidence. The trial court, in its findings of fact, found among other things that the consideration for the purchase of the property and the money spent for its improvement was furnished by the individual

contribution of funds by E. E. Woodruff; by the joint efforts and accumulations of the association of John E. Woodruff and E. E. Woodruff in the salvage business, and by the joint efforts of the plaintiff and defendant, Mary E. Woodruff, during their marriage. He further found that prior to the execution and delivery of the deed from E. E. Woodruff to Mary E. Woodruff, John E. Woodruff never questioned the title of E. E. Woodruff, nor claimed any interest in or lien upon the property, but in all his dealings with the property claimed he was acting as the attorney in fact or agent of E. E. Woodruff. He concluded as a matter of law that at the time of the execution of the deed to Mary E. Woodruff, E. E. Woodruff was the owner of the property, free and clear of all claims or demands on the part of the plaintiff, and that said deed vested the title of the property in the defendant Mary E. Woodruff. He further concluded that by virtue of the findings of fact, which included a finding that plaintiff in his bankruptcy proceeding did not set up any claim against E. E. Woodruff, or set up any lien or interest upon the property involved in this action, plaintiff was estopped from claiming any interest in or lien upon any of the real or personal property involved in this action.

Examination of the evidence convinces us that the judgment of the trial court was not clearly against the weight thereof. While in his petition plaintiff claimed that the purchase of the property was a joint venture or partnership arrangement between himself and his son, and asserted and sued to foreclose a lien for his own money expended upon the property in making improvements, his testimony shows that he regarded the property as his own. In fact, he specifically testified that he bought the property while in bankruptcy and placed the title thereto in his son's name. He further testified that all the money expended for improving the property was his money, although he did not state from what source it was derived. The taking of title to the property in his son's name, if it was his property, evidences his intention to conceal its acquisition from his creditors in the bankruptcy court. It is also significant that in the bankruptcy proceedings he made no mention of the salvage business which he and his son were then operating as partners, and which apparently they continued to operate. He testified that Mary E. Woodruff worked at Tinker Field during the war and that he saw a number of her checks, but the court would not permit him to testify as to what became of the money so earned by her.

E. E. Woodruff testified by deposition that he contributed $500 of the original purchase price according to his father, he being unable to remember the amount, and upon being asked if he did not testify in a forcible entry case brought against Mary E. Woodruff that he had only a small interest in the property, stated that he did not recollect making such statement and that he had several years of hard work in the partnership salvage business. The interest of the two parties in the salvage business is not shown, and apparently there was never an accounting between them. E. E. Woodruff testified that either shortly before or shortly after the trial of the forcible entry action, in February, 1947, his father stated that he was now rid of all the trash, and told him, E. E. Woodruff, never to darken his door again. And while plaintiff testified that Mary E. Woodruff had never resided in the property involved, but had always resided in the home place, the property settlement in the divorce case recited that she had a bedroom suite, a piano, typewriter and desk, and other property in the new house, which she was entitled to remove therefrom, thus contradicting the statement of plaintiff. Plaintiff further testified that at the time Mary E. Woodruff moved into the property, in February, 1947, he was sleeping there every night, but his grandson, who was produced by him as a witness, testified that he

slept there only occasionally, or as the witness put it, "off and on." Plaintiff admitted that he made no effort to file a lien upon the property for the expenditures claimed by him, and in the handling of the property acted under a power of attorney given him by his son prior to the time the son went overseas. The forcible entry and detainer action, brought after the son's return, was brought by plaintiff as agent for the son, and the son testified that that had nothing to do with the bringing of it, but assumed that his father had the right to do so under the power of attorney.

From all this evidence we think the trial court was justified in concluding the money expended for the property and improvements was derived from the earnings of the salvage business operated by plaintiff and his son as partners, and the earnings of Mary E. Woodruff during the war, and that in the absence of a specific showing as to the interest of the father and son in the partnership, was justified in assuming that their interest was equal, and that, as between the three parties interested, the contribution made by to make an accounting of the income ejected by plaintiff without any effort plaintiff was small. And he was further justified in believing that the interest of the son in the salvage business, from which he was apparently from the business, amounted to more in dollars and cents than the contribution of plaintiff to the purchase price and improving of the property. From the record it appears that the plaintiff, prior to the time his son became interested in Mary E. Woodruff, dominated the son, and that, as the son testified, he tried to take everything away from his former wife and son.

It being impossible for the court to ascertain from the evidence what amount, if any, plaintiff had expended in the purchase and improvement of the property which had not been reimbursed by his taking of the son's interest in the salvage business, or to what extent the salvage business and Mary E. Woodruff had contributed thereto, it follows that the evidence was not sufficient to establish an equitable lien for the amount claimed by plaintiff, or for any other specific sum, and that therefore plaintiff failed to sustain the allegations of his petition, or to establish an indebtedness from his son which would give him an equitable lien upon the property.

Plaintiff and the administrator of E. E. Woodruff contend that the deed made by E. E. Woodruff was an attempt to ratify the prior forged deed, and that the forged deed being incapable of ratification, neither deed conveyed title, citing Baldridge v. Sunday, 73 Okla. 287, 176 P. 404; Kline v. Mueller, 135 Okla. 123, 276 P. 200, and other cases. We do not agree with this contention. Ratification is defined as the giving of sanction and validity to something done by another, 52 C. J. p. 1144; Capps v. Hensley, 23 Okla. 311, 100 P. 515. The statement in the deed of E. E. Woodruff of the consideration of a previous deed, the signature of which was heretofore authorized, is not in our judgment sufficient to stamp his deed as an attempted ratification. It in nowise attempted to relate back to and validate the prior invalid deed, but was a gift made by him at a time when he could make a valid gift. In 38 C. J. S. p. 789, §13, the general rule is stated to be that if the doner has sufficient mental capacity to comprehend the transaction his gift will be valid. There is no question as to the mental capacity of E. E. Woodruff to dispose of his property at the time he made the deed, and he testified that he gave it to Mary E. Woodruff so that she could live there the rest of her life. The trial court properly held that this was a valid gift and that the deed vested the title in Mary E. Woodruff. In view of this holding it is unnecessary to consider or determine whether the marriage of E. E. Woodruff and Mary E. Woodruff was valid or void since the estate of E. E. Woodruff would have no interest in the property.

Affirmed.

WELCH, CORN, GIBSON, DAVISON, JOHNSON, and O'NEAL, JJ., concur. HALLEY, V. C. J., dissents.

HALLEY, V. C. J. (dissenting). I shall have to dissent in this case, because I am firmly of the opinion that both the findings of the trial court and the majority opinion are based on a misconception of the facts.

John E. Woodruff, Sr., filed a petition in bankruptcy under the Frazier-Lempke Act on January 13, 1942. On April 14, 1942, he amended his petition and asked to be declared a bankrupt under the general bankruptcy act, and on the same date, April 14, 1942, he was adjudged a bankrupt; and from that date on, anything that he acquired was not subject to the bankruptcy proceedings. The trial court was under the impression that he was responsible to the bankruptcy court until April 14, 1945, when it was said that he was discharged in bankruptcy. Even if he had not been discharged until 1945, the adjudication of bankruptcy reverts back to the time the petition is filed, and any property acquired after filing of petition in bankruptcy belongs to the bankrupt, free and clear of the bankruptcy proceedings; but certainly, in this case, when he was declared a bankrupt on April 14, 1942, anything he acquired after that time clearly was not subject to the bankruptcy proceedings, as we have previously said. See 8 C.J.S., Bankruptcy, §§70, 197, and 200. It is also the rule that property acquired after the filing of the petition in bankruptcy does not pass to the trustee. Id., Sec. 198. The property involved was acquired on July 10, 1944, more than two years after John E. Woodruff was adjudicated a bankrupt.

John E. Woodruff testified that he paid $2,100 for this property, $1,600 being his own money and $500 his son's money. There is no evidence in the record that E. E. Woodruff, the son, in whose name this five acres was held, had any claim to it other than as a partner. John E. Woodruff went ahead and made the improvements on the property, for which he claimed over $10,000. The son, in a deposition in this case, stated that he paid a very small amount toward purchasing the property, possibly $500. There is no testimony in the record to contravert the father's claim that he paid $2,100 for the property, $1,600 his own and $500 his son's, and that he got part of the money from a sister. Regardless of whether he did or did not, there is nothing in the record to contravert this testimony. He undoubtedly was making money after he was adjudged a bankrupt in 1942, and was entitled to use his earnings to purchase this property. His earnings were not subject to the bankruptcy proceedings, and he should not be charged with defrauding his creditors because he devoted his earnings after his adjudication in bankruptcy to his own personal ends. There is no justification in the record for the findings of fact of the trial judge as to the defrauding of creditors. There is nothing in the record to justify the statement in the majority opinion that the money spent for improvements on the property was furnished by the individual contributions of E. E. Woodruff; E. E. Woodruff never made any such statement, and there is nothing in the record to justify such a conclusion.

Any deed that E. E. Woodruff may have given to Mary E. Woodruff conveyed to her only such interest as E. E. Woodruff had in the property, subject to the lien of John E. Woodruff Sr. There was no occasion for John E. Woodruff, Sr., to put any claim in the bankruptcy proceedings against E. E. Woodruff, because this transaction had nothing to do with the bankruptcy proceedings.

The fact that John E. Woodruff, Sr., did not tell where the money came from with which he made the improvements is immaterial. This question was not asked on cross-examination. The fact that he was in the salvage business and other businesses is undisputed,

and there is nothing in the record to show that he did not make his money from those businesses, and there was nothing to prevent his spending it in any way he chose. He paid for the improvements and was entitled to a lien in proportion to whatever share his partner, E. E. Woodruff, had in the property. There is nothing in the evidence to show that a penny of Mary E. Woodruff's money went into the property. There is nothing to show what E. E. Woodruff's interest in the salvage business was, and nothing to show that any of his money went into the improvements that were placed upon the property by his father.

In my opinion this case should be reversed, with instructions to the trial court to determine what the respective partnership interests of E. E. Woodruff and John E. Woodruff, Sr., were in the property involved in this suit—which, according to the record now before us, would be 5/21 interest in E. E. Woodruff and 16/21 interest in John E. Woodruff, Sr.,—and the interest of E. E. Woodruff should be burdened with a lien for 5/21 of the value of the improvements placed upon the property by John E. Woodruff, Sr.

I dissent.