Earlene BARTON and Robert Barton, her husband, Roberta Mann, Appellants,

v.

CLEARY PETROLEUM CORPORATION, Magness Petroleum Company, Northern Natural Gas Company, Appellees.

No. 49257.

Court of Appeals of Oklahoma, Division 1.

May 3, 1977.

Samuel K. Barton, Shattuck, for appellants.

Monnet, Hayes, Bullis, Thompson & Edwards by Ann Dudley Marshall, Oklahoma City, for appellees Cleary Petroleum Corp. & Magness Petroleum Co.

McAfee, Taft, Mark, Bond, Rucks & Woodruff by Ray G. Moss, Oklahoma City, for appellee Northern Natural Gas Co.

REYNOLDS, Presiding Judge:

This appeal is from sustention of defendants' motion for summary judgment. The plaintiffs brought this action for: the fair market value of oil and gas produced, an accounting from the defendants (which was granted), the reasonable value of an oil and gas lease, and punitive or exemplary damages.

The parties will be referred to as they appeared in trial court; Earlene Barton, Robert Barton and Roberta Mann, as plaintiffs, and Cleary Petroleum Corporation (Cleary), Magness Petroleum Company (Magness) and Northern Natural Gas Company (Northern) as defendants.

Magness, on January 18, 1972, drilled and subsequently completed the Hanan No. 31–1 well in the Morrow Sand in the NW/4 of the SE/4 of Section 31, Township 20 North, Range 23 West in Ellis County, Oklahoma. The well was not on plaintiffs' land. The plaintiffs own 98.40 acres of minerals in Section 31, but do not own an interest in the Southeast Quarter where the well is located. At the time of drilling and completing the well there was no spacing order of the Oklahoma Corporation Commission in effect for the Morrow Sand in Section 31.

On August 8, 1972 Magness entered into a gas purchase contract with Northern to purchase all gas produced. Pursuant to the gas purchase contract, Northern paid all proceeds from production to Magness. In turn, Magness disbursed the proceeds to participating working interest and mineral interest owners.

Cleary Petroleum Corporation became the operator of the Hanan No. 31–1 well on December 1, 1973.

The Corporation Commission on March 7, 1974 created a 640 acre drilling and spacing unit for the Morrow Sand common source of supply by Order No. 103,742. This order established the Hanan No. 31–1 well as the permitted well for the unit. The plaintiffs were unleased mineral owners under the unit. The well was drilled to a depth of 14,266 feet to the Hunton Formation and thereafter finding it non-productive, completed the well in the Morrow Sand Formation. The total gross value of gas production from the date of first production to the date of last production before taxes was $41,766.54 and the total cost of the well was in excess of $200,000. The well was plugged and abandoned in November, 1974.

The plaintiffs contend they are entitled to ⅞ths of the production in proportion to the amount their mineral acres bear to the 640 acre mineral spacing unit.

■ Magness, being the lessee of the Southeast Quarter of Section 31, had the right to drill, receive and market the production from the well. *Wood Oil Co. v. Corporation Commission*, 205 Okl. 537, 239 P.2d 1023 (1950).

■ After March 7, 1974, the date of the order establishing a drilling and spacing unit, the plaintiffs were entitled to a ⅛th pro rata share in the production of the unit well. 52 O.S.1971, § 87.1; *Ward v. Corporation Commission*, 501 P.2d 503 (Okl.1972); *Wood Oil Co. v. Corporation, Commission,*

supra. The Corporation Commission has jurisdiction to enter an order establishing a drilling and spacing unit whether or not all of the lands are leased or unleased. *Sunray DX Oil Co. v. Cole*, 461 P.2d 305 (Okl.1967). See also Donald E. Pray, "The Oklahoma Well Spacing Act and Its Interpretations," 36 O.B.A.J. 487, 488 (1965).

52 O.S.1971, § 87.1(d) provides:

" . . . [F]or the purpose of this section the owner, or owners, of oil and gas rights in and under an unleased tract of land shall be regarded as a *lessee* to the extent of a seven-eights (⅞) interest in and to said rights and a *lessor* to the extent of the remaining one-eighth (⅛) interest therein. . . . " (Emphasis added.)

Prior to enactment of this statute a non-participating or non-contributing cotenant received no income from production until the developing cotenant recovered his cost of development, operation and marketing. *Earp v. Mid-Continent Petroleum Corp.*, 27 P.2d 855 (Okl.1933). The owners of undivided portions of oil and gas rights in and under real estate are tenants in common. Each of such cotenants may enter upon the premise for the purpose of exploring for oil and gas. However, under conservation drilling and spacing statutes a cotenant is excluded from exploring for oil and gas upon the creation of a drilling and spacing unit and the payment to him of his pro rata share of his ⅛ mineral interest as unleased lessor. Applying the reasoning of tenants in common to the plaintiffs' position, plaintiffs could have sought proper relief from the Corporation Commission, or voluntarily paid their proportionate cost and received their proportionate part of the ⅞ working interest as unleased lessee.

■ The developing cotenant never recovered its cost of drilling and developing; therefore plaintiffs cannot participate in the working interest.

■ Where the defendant offers evidence which indicates there is no substantial controversy as to a fact material to plaintiff's cause of action and that fact is in the defendant's favor, the plaintiff has the burden of showing that evidence is available which would justify trial of the issue. The ruling on motions for summary judgment is to be made on the record the parties have actually presented and not on a record which is potentially possible. *Weeks v. Wedgewood Village, Inc.*, 554 P.2d 780 (Okl. 1976).

AFFIRMED.

BOX and ROMANG, JJ., concur.