**KIRKPATRICK OIL & GAS COMPANY,**
**Plaintiff-Appellant,**

v.

**UNITED STATES of America and Thomas S. Kleppe, Secretary of the Interior, Defendants-Appellees.**

No. 80–1117.

United States Court of Appeals, Tenth Circuit.

April 19, 1982.

Charles Nesbitt, Oklahoma City, Okl., for plaintiff-appellant.

Thomas H. Pacheco, Atty., Dept. of Justice, Washington, D. C. (James W. Moorman, Asst. Atty. Gen., Washington, D. C., Larry D. Patton, U. S. Atty., Susie Pritchett, Asst. U. S. Atty., Oklahoma City, Okl., Anne S. Almy, Atty., Dept. of Justice, Washington, D. C., with him on the briefs), for defendants-appellees.

Before DOYLE and LOGAN, Circuit Judges, and TEMPLAR,* District Judge.

LOGAN, Circuit Judge.

Kirkpatrick Oil & Gas Company (Kirkpatrick) appeals from the district court's judgment affirming the Secretary of Interior's determination that Kirkpatrick's oil and gas leases on federally owned land had expired for failure to produce oil or gas in paying quantities. The controlling issue on appeal is whether, without the Secretary of Interior's approval, state-compelled communitization binds the federal government as landowner, so that production from other property in the "unit" is attributed to the federal property, thereby extending the terms of the federal leases.[1]

On April 1, 1969, Kirkpatrick acquired by assignment oil and gas leases on federally owned land in Oklahoma. By statute and their own provisions, the leases were to remain in effect beyond their initial ten-year terms only so long as they produced oil or gas in paying quantities. See 30 U.S.C. § 226(e). The initial terms had all expired by December 31, 1975. On November 26, 1976, the United States informed Kirkpatrick that its oil and gas leases were terminated for lack of paying production. Kirkpatrick appealed this decision to the Secretary of Interior, which through the Interior Board of Land Appeals upheld the termination. Kirkpatrick then filed the instant action in federal district court seeking a declaration that its leases remain in effect and seeking to quiet title to them. The district court, hearing the case based on stipulated facts, held the leases had expired. Kirkpatrick appeals that decision. On appeal we must determine whether substantial evidence supports the Secretary's decision and whether the Secretary applied the proper legal standards. See Pan American Petroleum Corp. v. Udall, 352 F.2d 32, 35 (10th Cir. 1965).

Although within the ten-year terms Kirkpatrick drilled no well on the federal property, it contends that because an Oklahoma drilling and spacing order places in a single

---

* Honorable George Templar, United States District Judge for the District of Kansas, sitting by designation.

1. Kirkpatrick also argues the Secretary may not cancel its leases because (1) the communitization agreement the Secretary previously approved satisfies the requirement of production in paying quantities because a well drilled pursuant to that agreement remains capable of producing gas in paying quantities, even though the well has not done so for several years, and (2) the government did not give Kirkpatrick the requisite sixty-day notice of its intention to terminate the leases. These arguments were not made to the trial court. After reviewing the facts of this case, we see no manifest injustice that would cause us to depart from the normal rule that we do not determine issues presented for the first time on appeal. See Gomes v. Williams, 420 F.2d 1364, 1367 (10th Cir. 1970).

unit the federal lands and nearby nonfederal lands, oil and gas produced from Kirkpatrick's well on the nonfederal lands constitute production from the federal lands, and thereby extend the leases. The Secretary contends that federal leases are not subject to communitization unless approved by the Secretary and observes that the Secretary never approved the Oklahoma order. In response to the Secretary, Kirkpatrick reasons that Oklahoma oil and gas conservation laws apply to federal lands within Oklahoma unless and until superseded by Congress; on this issue Congress has not superseded those laws; therefore, the Oklahoma drilling and spacing order applies to the federal lands within the unit. The crucial question in this case is whether Congress intended to subject federal lands to state communitization orders only when approved by the Secretary of Interior. If so, then the federal requirement prevails. U.S. Const. art. VI, cl. 2.

■ Although the Constitution empowers Congress to regulate federal lands, U.S. Const. art. IV, § 3, cl. 2, Congress determines whether or not to exercise this power. *Texas Oil & Gas Corp. v. Phillips Petroleum Co.*, 277 F.Supp. 366, 368 (W.D.Okla. 1967), *aff'd per curiam*, 406 F.2d 1303 (10th Cir.), *cert. denied*, 396 U.S. 829, 90 S.Ct. 80, 24 L.Ed.2d 80 (1969). Through the Mineral Lands Leasing Act of 1920, codified at 30 U.S.C. §§ 181–263, Congress has prescribed limited, but not exclusive, controls over the leasing of federal lands for oil and gas production. *Wallis v. Pan American Petroleum Corp.*, 384 U.S. 63, 86 S.Ct. 1301, 16 L.Ed.2d 369 (1966); *Texas Oil & Gas*, 277 F.Supp. at 369.

■ Kirkpatrick relies upon 30 U.S.C. §§ 187 and 189 as indicating that Congress intended to submit federal oil and gas lands to state-forced communitization. Section 187 lists certain provisions that must appear in federal mineral leases and declares, "None of such provisions shall be in conflict with the laws of the State in which the leased property is situated." But this section primarily focuses on various safeguards for workers on federal oil and gas lands and

does not relate to land use controls. *See Ventura County v. Gulf Oil Corp.*, 601 F.2d 1080, 1085 (9th Cir. 1979), *aff'd mem.*, 445 U.S. 947, 100 S.Ct. 1593, 63 L.Ed.2d 782 (1980). Section 189 states, in pertinent part, "Nothing in this chapter shall be construed or held to affect the rights of the States or other local authority to exercise any rights which they may have, including the right to levy and collect taxes upon improvements, output of mines, or other rights, property, or assets of any lessee of the United States." This proviso gives the states no power they do not already possess. *Ventura County*, 601 F.2d at 1086. It does not answer the question whether the states can communitize federal lands without federal consent. This Court relied upon sections 187 and 189 in affirming enforcement of an Oklahoma communitization order entered over the objection of *lessees* of federal lands. *Texas Oil & Gas*, 406 F.2d 1303. But, as both the trial and circuit court opinions stressed, there the Secretary had approved the state order. The decision does not control the instant case, in which the federal lessee approved the state order but the Secretary did not.

Section 226(j) specifically treats communitization of federal leases. In its most pertinent paragraph it provides:

"When separate tracts cannot be independently developed and operated in conformity with an established well-spacing or development program, any lease, or a portion thereof, may be pooled with other lands, whether or not owned by the United States, under a communitization or drilling *agreement* providing for an apportionment of production or royalties among the separate tracts of land comprising the drilling or spacing unit *when determined by the Secretary of the Interior to be in the public interest,* and operations or production pursuant to such an agreement shall be deemed to be operations or production as to each such lease committed thereto."

30 U.S.C. § 226(j) (emphasis added).

Kirkpatrick emphasizes the word "agreement" and argues that the Secretary's con-

sent is required only for voluntary agreements, not for *state-ordered* communitization. The government argues for a broader construction. We agree with the government.

■ In a number of paragraphs section 226(j) delegates to the Secretary's discretion the power to approve, in order to promote conservation, modifications to federal mineral leases, unit or cooperative plans, and operating, drilling, or development contracts.[2] To be consistent with the rest of section 226(j), Congress must have intended that the Secretary have approval authority over any communitization of federal lands, and that no state-ordered forced pooling would bind the government without the Secretary's consent.[3]

This construction is supported by the Supreme Court's analytical approach that fo-

---

2. 30 U.S.C. § 226(j) reads, in part, as follows:

"(j) For the purpose of more properly conserving the natural resources of any oil or gas pool, field, or like area, or any part thereof (whether or not any part of said oil or gas pool, field, or like area, is then subject to any cooperative or unit plan of development or operation), lessees thereof and their representatives may unite with each other, or jointly or separately with others, in collectively adopting and operating under a cooperative or unit plan of development or operation of such pool, field, or like area, or any part thereof, whenever determined and certified by the Secretary of the Interior to be necessary or advisable in the public interest. *The Secretary is thereunto authorized, in his discretion,* with the consent of the holders of leases involved, to establish, alter, change, or revoke drilling, producing, rental, minimum royalty, and royalty requirements of such leases and to make such regulations with reference to such leases, with like consent on the part of the lessees, in connection with the institution and operation of any such cooperative or unit plan as he may deem necessary or proper to secure the proper protection of the public interest. The Secretary may provide that oil and gas leases hereafter issued under this chapter shall contain a provision requiring the lessee to operate under such a reasonable cooperative or unit plan, and he may prescribe such a plan under which such lessee shall operate, which shall adequately protect the rights of all parties in interest, including the United States.

"Any plan authorized by the preceding paragraph which includes lands owned by the United States may, *in the discretion of the Secretary,* contain a provision whereby authority is vested in the Secretary of the Interior, or any such person, committee, or State or Federal officer or agency as may be designated in the plan, to alter or modify from time to time the rate of prospecting and development and the quantity and rate of production under such plan. All leases operated under any such plan approved or prescribed by the Secretary shall be excepted in determining holdings or control under the provisions of any section of this chapter.

"When separate tracts cannot be independently developed and operated in conformity with an established well-spacing or development program, any lease, or a portion thereof, may be pooled with other lands, whether or not owned by the United States, under a communitization or drilling agreement providing for an apportionment of production or royalties among the separate tracts of land comprising the drilling or spacing unit *when determined by the Secretary of the Interior to be in the public interest,* and operations or production pursuant to such an agreement shall be deemed to be operations or production as to each such lease committed thereto.

"Any lease issued for a term of twenty years, or any renewal thereof, or any portion of such lease that has become the subject of a cooperative or unit plan of development or operation of a pool, field, or like area, *which plan has the approval of the Secretary of the Interior,* shall continue in force until the termination of such plan....

"*The Secretary of the Interior is hereby authorized, on such conditions as he may prescribe,* to approve operating, drilling, or development contracts made by one or more lessees of oil or gas leases, with one or more persons, associations, or corporations *whenever, in his discretion,* the conservation of natural products or the public convenience or necessity may require it or the interests of the United States may be best subserved thereby. All leases operated under such approved operating, drilling, or development contracts, and interests thereunder, shall be excepted in determining holdings or control under the provisions of this chapter.

"*The Secretary of the Interior, to avoid waste or to promote conservation of natural resources, may authorize* the subsurface storage of oil or gas, whether or not produced from federally owned lands, in lands leased or subject to lease under this chapter...." (Emphasis added.)

3. The legislative history sheds no light. *See* S.Rep.No.1549, 86th Cong., 2d Sess., *reprinted in* [1960] U.S.Code Cong. & Ad.News 3313, 3313; Cong.Rep.No.2135, 86th Cong., 2d Sess., *reprinted in* [1960] U.S.Code Cong. & Ad.News 3313, 3335.

cuses on whether applying state law to an issue affecting a federal mineral lease poses a "significant threat to any identifiable federal policy or interest." *Wallis v. Pan American Petroleum Corp.*, 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369 (1966). If compulsory state pooling orders were applied to federally owned lands over the Secretary's objection, a state could impose acreage requirements and unit boundaries that conflict with the Secretary's judgment of the best standards for conservation purposes.[4] If federal lessees are unable to secure the Secretary's approval for a voluntary communitization agreement, they should not be able to circumvent that requirement by obtaining a compulsory state pooling order. *Cf. Samedan Oil Corp. v. Cotton Petrol. Corp.*, 466 F.Supp. 521 (W.D. Okla.1978) (communitization of Indian lands ineffective without Secretary's approval); *Assiniboine and Sioux Tribes v. Calvert Exploration Co.*, 223 F.Supp. 909, 913 (D.Mont. 1963) (same), *rev'd on other grounds sub nom. Yoder v. Assiniboine and Sioux Tribes*, 339 F.2d 360 (9th Cir. 1964). Also, because production extending a federal lease in a communitized unit may come from a well drilled on nonfederal land, if state orders were to apply to federal lands without the Secretary's approval, it would interfere with the Secretary's control over its own lessees and lease provisions requiring, for example, the lessee to drill in different production zones or to produce at particular rates.[5]

We conclude that a fair interpretation of the Mineral Lands Leasing Act of 1920 requires us to hold that a state communitization order may not bind federally owned land, or extend leases of such land within the unit, without the consent of the Secretary of the Interior.

AFFIRMED.

4. 30 U.S.C. § 189 gives the Secretary express authority "to fix and determine the boundary lines of any structure, or oil or gas field, for purposes of this chapter."

5. 30 U.S.C. § 188 permits the Secretary to cancel leases "whenever the lessee fails to comply with any of the provisions of this chapter, of the lease, or of the general regulations promulgated under this chapter."