322

Martin Earl KARDOKUS, Mary Elizabeth Kardokus and Virgil Alton Brown, Appellees,

v.

F. Howard WALSH, Jr., Elson Oil Company, A.E. Investments, Inc., Greenleaf Energy Corporation, Enerquest Corporation, Energy Fuel Corporation of America, Ciri II, Ltd., and CFT–1981, Ltd., Appellants.

No. 68845.

Supreme Court of Oklahoma.

April 17, 1990.

Rehearing Denied Sept. 25, 1990.

DeVore Law Firm by Allan DeVore and Marjorie J. Ramana, Oklahoma City, and Douglas E. Burns, Woodward, for appellees.

Musser, Bunch, Robinson & Hirsch by Doyle G. Bunch and Martha L. Marshall, Oklahoma City, for appellants.

HODGES, Justice.

This case centers around a quiet title suit between the owners (appellees) of an undivided mineral interest underlying the southwest quarter (SW/4) of Section 30–12N–13W, Caddo County, Oklahoma and their lessees (appellants). An oil and gas lease was entered into between the appellees and Brookwood Oil Company with a primary term of three years, expiring on July 27, 1984. By virtue of assignments of the lease the appellants now claim an interest as successors to Brookwood. All of the parties now before us are non-Indians with interests claimed in non-Indian land.

Almost ten years prior to the expiration date of the subject lease, the Oklahoma Corporation Commission (Commission) spaced all of Section 30 as an irregular or correction drilling and spacing unit containing 617.04 acres for the Red Fork common source of supply. Included in the Section 30 unit is Indian land located in the northeast quarter (NE/4) of that section. These Indian interests were approved for lease by the Secretary of the Interior to L. O. Ward (Ward). On July 27, 1984, Ward commenced drilling a well on Indian land in the NE/4 of Section 30 which was completed as a producing well in August, 1984. A Commission pooling order covering all of Section 30 was issued August 3, 1984 pursuant to a pooling hearing held prior to the expiration date of the primary term of the subject lease. On March 5, 1986, the Secretary of the Interior gave the required departmental approval to an agreement communitizing the rights to hydrocarbons from specific horizons (including the Red Fork) underlying Section 30. This agreement was made effective as of October 1, 1985, the date of application for the communitization agreement.

The appellees filed the present quiet title suit based on the theory that the spacing order issued by the Commission was of no effect until the communitization agreement had been approved by the Secretary of the Interior. Thus, the contested lease had expired by its own terms on July 27, 1984 despite the fact that Ward had commenced a well in the NE/4 of Section 30. The trial judge granted summary judgment for the appellees finding that the lease "expired by its terms for failure of production in paying quantities or commencement of drilling operations on the leased premises or on lands properly and voluntarily unitized or pooled therewith." The Court of Appeals affirmed the trial court's order and we granted certiorari to answer the following question of first impression: Can a well drilled on restricted Indian land that falls within the geographical boundaries of a state-authorized drilling and spacing unit be regarded as the unit well before the inclusion of the Indian land in the unit has been authorized by the Secretary of the Interior? We answer in the negative.

I.

The appellants contend that the drilling of the well on Indian land extended the oil and gas lease under state law because federal law does not control private contractual rights involving non-Indian lands.

It is undisputed in Oklahoma that the use of the police power of the state to protect correlative rights and prevent waste is necessary. *Patterson v. Stanolind Oil & Gas Co.*, 182 Okl. 155, 77 P.2d 83 (1938). In light of this necessity, the state unitization and pooling statute set out at title 52, section 87.1, has been held to be constitutional. *Anderson v. Corporation Commission,*

327 P.2d 699 (Okla.1957). The result of a Commission unitization order is that one well is found to be sufficient to drain the minerals from the area unitized and the parameters of the location of the well are set forth in the order. Regardless of where such a well is drilled in the unit, the conditions extending the primary terms of oil and gas leases within the unit are deemed to be satisfied so long as the well is productive. *Layton v. Pan America Petroleum Corp.*, 383 P.2d 624 (Okla.1963).

These decisions have long controlled oil and gas production from drilling and spacing units on non-Indian land in Oklahoma. The appellants assert that there should be no change in these procedures simply because a portion of the unit is Indian land. The appellees, on the other hand, argue that because no communitization agreement received the required approval from the Department of the Interior during the primary term of the non-Indian lease, the lease was not a part of the unit and, therefore, expired by its own terms when no production was in place on the leased lands at the end of the primary term.

■ Historically, the federal government's role in controlling Indian interests has been seen as exclusive. State jurisdiction in Indian country, however, may be exercised where the field has not been specifically pre-empted by federal statutes, regulations and policies. *Ahboah v. Housing Auth. of Kiowa Tribe*, 660 P.2d 625 (Okla.1983); *Goforth v. State*, 644 P.2d 114 (Okla.Crim.App.1982). Although the parties to the quiet title suit are non-Indians the effect of Indian lands on the state-authorized unit is an issue that must be explored in order to finally determine the status of title to the property interest at stake.

In the federal regulations for leasing Indian lands, the section titled "Leasing of Allotted Lands for Mining" provides:

All leases issued pursuant to the regulations in this part shall be subject to a co-operative or unit development plan affecting the leased lands *if and when required by the Secretary of the Interior.*

25 C.F.R. § 212.2(c) (emphasis added). A similar regulation, titled "Leasing of Restricted Lands of Members of the Five Civilized Tribes, Oklahoma, for Mining," requires:

All such leases shall be subject to any cooperative or unit plan of development affecting the leased lands that may be required by the Secretary of the Interior, *but no lease shall be included in any cooperative or unit plan without prior approval of the Secretary of the Interior.* If said plan effects a change in the lease terms, the consent of the lessor or lessors must be obtained *before the plan is effective.*

*Id.* at § 213.3(b) (emphasis added).

These rules are concisely and clearly worded. Further, they convey Congressional intent to exercise approval or disapproval over any unitization effort whether it is a cooperative venture or state enforced.

The Congressional power over Indian interests has been described by this Court as "broad, plenary and paramount." *Bell v. Phillips Petroleum Co.*, 641 P.2d 1115 (Okla.1982). At the same time we have recognized that the state conservation laws can work in concert with the federal regulations so long as Commission orders affecting Indian lands are submitted to and approved by the Secretary of the Interior before they are considered to be valid. *Currey v. Corporation Comm'n*, 617 P.2d 177 (Okla.1979).

■ Confronted with the federal regulations and Oklahoma case law, appellants insist that the parties' status as non-Indians prevents federal preemption. They argue that the purpose of these federal regulations is to protect Indians; therefore, non-Indians should not benefit from the use of these rules. It is apparent that any decision in this case will not only affect the interests of the parties but will also affect the Indian interests in production from the well drilled in the NE/4 of Section 30. Thus, a decision that involves the application of both federal law and state law is necessary.

■ A similar question was addressed in *Samedan Oil Corp. v. Cotton Petroleum Corp.*, 466 F.Supp. 521 (W.D.Okla.1978). There, restricted Indian land was included in a Commission authorized drilling and spacing unit, but the well was not drilled on the Indian leases. The case primarily involved a quiet title action between competing Indian leases. However, a key factor in deciding the case was a preliminary determination of whether the imposition of a Commission drilling and spacing unit without an approved communitization agreement was sufficient to extend the primary terms of the Indian leases despite the fact that the unit well was not drilled on the Indian lands. The court observed:

In paragraph 11 of said [Indian] leases the parties thereto agreed to "subscribe to and abide by any agreement for the cooperative or unit development of the field or area, affecting the leased lands, or any pool thereof, if and when collectively adopted by a majority operating interest therein *and approved by the Secretary of the Interior, during the period of supervision."*

In view of the foregoing, it is apparent that the SW¼ SW¼ of Section 22 [Indian leases] could not be included in the drilling and spacing unit created by the Oklahoma Corporation Commission's Orders No. 65190 and 73241 and the pooling arrangement established by Order No. 111345 *until such time as these orders were considered and approved by the Secretary of the Interior or his authorized representative.*

*Id.* at 526. (emphasis added). In the trial court's order issued in the present controversy one of the facts stipulated to by the parties states:

8. The [Indian] leases include the following provision related to unit operation:

"The parties hereto agree to subscribe to and abide by any agreement for the cooperative or unit development of the field or area, affecting the leased lands, or any pool thereof, that may be required by the Secretary of the Interior, *but no leases shall be included in any coopera-*

*tive or unit plan without prior approval of the Secretary of the Interior."* (emphasis added).

It is clear that the Indian land involved in the case before us could not be considered a part of the state-created unit until a communitization agreement had been approved by the Secretary of the Interior. Thus, the well drilled on the Indian land could not be considered the unit well until the unit was federally recognized. To hold otherwise would indefinitely suspend the oil and gas lease primary terms of non-Indian land owners. This would leave them at the mercy of their lessees who, having secured a lease within any Commission authorized unit that included non-communitized Indian land, would be under no compulsion to file for a communitization agreement approval until the primary terms of the Indian leases were in danger of expiring.

To allow lessees to indefinitely suspend the running of the primary lease, while under no compulsion to seek communitization approval from the Secretary of the Interior, would not promote the development of oil and gas in the state, nor would it protect the correlative rights of mineral owners, whether Indian or non-Indian. We hold that, absent an approved communitization agreement from the Secretary of the Interior, or its authorized representative, effective prior to the date of expiration of the appellees' oil and gas lease primary term, the drilling of the well on the Indian land did not extend the primary term of the subject oil and gas lease.

## II.

■ Appellants next argue that regardless of whether an approved communitization agreement existed at the expiration of the primary term of the contested lease, the trial court still erred in holding that the lease expired by its own terms because: 1) the force majeure clause in the lease saved it from expiration; or 2) the approval of the communitization agreement should relate back to the date of the Indian leases. We do not agree with either of these arguments.

Appellants contend they were prevented from drilling a second well within the unit once Ward drilled a well on the Indian leases. Ordinarily, in a state created unit, the drilling of a permitted well within the unit works to prohibit the drilling of a second well in the unit absent a Commission order authorizing a second well. *Buckles v. Wil–Mc Oil Corp.*, 585 P.2d 1360 (Okla.1978); *Layton v. Pan American Petroleum Corporation*, 383 P.2d 624 (Okla.1963). However, that is true only when there is a valid and enforceable Commission unitization order. Because, as we have held, no unit existed until the approval of the communitization agreement, the appellants were not prevented from seeking their own communitization agreement. But appellants preferred to rely on Ward not only to drill what they considered to be a unit well (on the last day of the contested oil and gas lease primary term), but also to pursue a communitization agreement. We refuse to recognize a continuing lessee-lessor relationship, under these facts, based upon the actions of Ward, who was never a party to the lease agreement. Because no well was commenced on the leased lands prior to the expiration date of the primary term, the oil and gas lease expired by its own terms.

■ As to relating back the approval of the communitization agreement to the date of the Indian leases, it must be noted that the communitization, dated March 5, 1986, has already been made effective October 1, 1985, the date of the application for the agreement. The federal regulations for leasing Indian lands set forth the procedures to appeal administrative actions of the Secretary of the Interior or the authorized representative of the Secretary. Appellants have failed to show that they have exhausted the administrative remedies to no avail. Nor have they alleged that any attempt to appeal the communitization agreement has been made. Because the communitization agreement is subject to an adequate administrative review as prescribed in the Code of Federal Regulations, we are without jurisdiction to review the decision. *Martin v. Harrah Indep. School Dist.*, 543 P.2d 1370 (Okla.1975); *National Indian Youth Council v. Morton*, 363 F.Supp. 475 (W.D.Okla.1973).

**COURT OF APPEALS' OPINION IS VACATED. TRIAL COURT'S ORDER GRANTING SUMMARY JUDGMENT IS AFFIRMED.**

LAVENDER, SIMMS, DOOLIN, ALMA WILSON and SUMMERS, JJ., concur.

KAUGER, J., concurs in part and dissents in part.

HARGRAVE, C.J., and OPALA, V.C.J., dissent.