**Michael SHEARN, an individual Plaintiff,**

v.

**WARD PETROLEUM CORPORATION, an Oklahoma corporation, and the United States of America, Defendants.**

**No. CIV–91–622–A.**

United States District Court, W.D. Oklahoma.

Dec. 10, 1992.

John M. Rowntree, Jr., Stephen G. Solomon, Larry Derryberry, Derryberry Quiqley Parrish, & Blankenship, Oklahoma City, OK, for plaintiff.

Donald K. Blackwell, Michael G. Harris, Sara W. Hurst, John C. Moricoli, Jr., Moricoli Wilson Harris, Cottingham & Hurst, Oklahoma City, OK, for Ward Petroleum Corp.

Ronny D. Pyle, U.S. Atty's. Office, Oklahoma City, OK, for U.S.

## MEMORANDUM OPINION

ALLEY, District Judge.

This case involves the rights of the United States and its lessee to recover oil and gas production proceeds from the operator of a well drilled on a state-ordered spacing and drilling unit in which federal minerals are located.

All issues have been presented by motions and decided by the court in prior orders or resolved by stipulation of the parties, except for the issues of the amount of money damages, prejudgment interest, post-judgment interest, and attorney fees. This final judgment affirms all findings and orders previously entered and resolves all matters addressed in the case.

The plaintiff, Michael Shearn ("Shearn") brought this action as the lessee of federal mineral property located within a section of land designated by an order of the Oklahoma Corporation Commission as a spacing and drilling unit for the production of hydrocarbons. Shearn brought this action against co-defendant Ward Petroleum Corporation ("Ward"), as the operator of the producing oil and gas well on the unit (the "unit well"), claiming that Ward had not paid Shearn and the United States any production proceeds from the unit well.

Shearn sought an accounting; a judgment declaring Shearn, as the lessee, to be a working interest owner and the United States, as lessor, to be a royalty interest owner in the unit well; and a money judgment against Ward for production proceeds of the unit well attributable to the federal mineral property which should have been paid to Shearn.

 Ward moved to dismiss the action for failure to join indispensable parties claiming that all the working interest owners of the unit well had to be joined as parties. The court affirms its prior order denying Ward's motion. What Ward overlooked is the clear and abundant case law that holds that a unit operator stands in a fiduciary or trustee-like status as to the interest owners in a well. *Young v. West Edmond Hunton Lime Unit*, 275 P.2d 304, 309 (Okla.1954); *Olansen v. Texaco*, 587 P.2d 976, 981 (Okla.1978); *Leck v. Continental Oil Co.*, 800 P.2d 224, 229 (Okla.1990); *Reserve Oil, Inc. v. Dixon*, 711 F.2d 951, 953 (10th Cir.1983). If Ward paid the wrong parties, then the improper payment is no defense to its fiduciary obligation to the plaintiff. Ward may seek another lawsuit to recover from the parties who were wrongfully paid, but Ward cannot as a matter of law require plaintiff to join those parties or defend by claiming that plaintiff should recover from them instead of Ward.

The United States cross-claimed against Ward stating the Government was approving and ratifying the Corporation Commission spacing and drilling unit order to include the federal mineral property in the unit and claimed that the United States was, as a full mineral interest owner in the unit, thus entitled to all of the federal mineral property's proportionate share of unit well production proceeds from the date of first production to the effective date of Shearn's lease. Thereafter, the United States contended, it is entitled, as lessor of the federal mineral property, to the royalty set forth in the lease.

In its answer to the allegations and claims of Shearn and the United States, Ward admitted that it did not own or claim an interest in the federal mineral property; that it had knowledge of the United States' ownership of the federal mineral property in the unit when the unit well was drilled; that Ward took no action to notify the United States of the existence of the unit well; and that neither Shearn nor the United States had received any production proceeds from the unit well. However, Ward denied that either Shearn or the United States had been or is now entitled to any production proceeds from the unit well.

The parties filed cross motions for summary judgment. The applicable standards to be applied to summary judgment motions in civil cases are well defined. The Supreme Court stated in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), that where the moving party shows that the opposing party is unable to produce sufficient evidence in support of the opposing party's case, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) refined this definition, stating that only disputes over facts that affect the outcome of the suit under governing law will overcome a finding of summary judgment. Applying these standards to the facts of the case, the Court finds as follows.

The following facts are not in dispute:

(1) In 1976 the Oklahoma Corporation Commission issued an order establishing Section 32, Township 13 North, Range 12 West, Blaine County, Oklahoma, a 640 acre governmental section of land, as a spacing and drilling unit, finding that the Springer and certain other formations were common sources of hydrocarbon supply underlying the entire unit, and ordering that no more than one well could produce from the common source of supply in the unit.

(2) At all time relevant to the case, the United States has been the owner of the federal mineral property located within the unit.

(3) In 1983, Ward became the operator of the unit well, the Laubhan–Friesen No. 1–32, completed drilling and began producing the unit well from the Springer formation

in 1984, and has since continuously operated the unit well.

(4) Oil and gas production proceeds from the unit well have exceeded the unit well costs by millions of dollars.

(5) On March 1, 1990, the United States issued an oil and gas lease covering the federal mineral property to Shearn.

(6) Ward has not paid, or caused to be paid, any oil and gas production proceeds from the unit well to Shearn or the United States.

(7) In 1991, the District Manager of the Bureau of Land Management, United States Department of Interior approved and ratified the 1976 Oklahoma Corporation Commission spacing and drilling unit order and the inclusion of the federal mineral property in the unit.

## FEDERAL MINERAL ENTITLEMENT TO UNIT PRODUCTION

■ Each of the parties moved for summary judgment on the basic issue of whether Shearn and the United States are entitled to recover production proceeds of the unit well from Ward.

Shearn and the United States showed that an Oklahoma Corporation Commission spacing and drilling unit order establishes all interest owners in the unit as co-tenants as of the date of the order and apportions production from the unit among all owners in proportion to the surface acres that their respective tracts bear to the total unit acreage.[1] They acknowledged that, without the United States' consent, a state spacing and drilling unit order cannot affect federal minerals. However, they claimed that the United States may consent to the federal mineral property being subject to the state spacing and drilling unit order by approving the state unitization order which establishes the federal mineral interest owner's co-tenancy and entitlement to share unit production with other unit interest owners.[2] Furthermore, Shearn and the United States contend that approval of unitization may be in the form of a ratification with retroactive effect to the date of the order which entitles the federal mineral property interest owner to share in all unit well proceeds since first production.[3]

Ward acknowledged that the Oklahoma State spacing and drilling unit order entitles all mineral interest owners in the unit to share in production from a well located anywhere in the unit. However, Ward argued that federal mineral interests can only be entitled to share in such unit production when communitization of the federal interest with nonfederal interests is accomplished by a communitization agreement as provided in 30 U.S.C. § 226(j) and, since there is no communitization agreement in this case, neither Shearn nor the United States is entitled to participate in the unit well. Ward also argued that communitization cannot be retroactively applied.

The Court disagrees with all of Ward's contentions. The court affirms its prior findings and orders that Shearn and the United States have sustained the burden of their motions for summary judgment and, even under the most liberal construction of summary judgment standards, Ward has failed to present sufficient legal authority or factual evidence to defeat their motions.

As a matter of law, the 1976 Corporation Commission drilling and spacing order operated to unitize or communitize the oil and

1. Citing 52 O.S. § 87.1; *Ward v. Corporation Commission,* 501 P.2d 503, 507 (Okl.1972); *Barton v. Cleary Petroleum Corp.,* 566 P.2d 462, 464 (Okl.App.1977); and Kuntz, LAW OF OIL AND GAS, Vol. 5, § 77.3(c) (1979).

2. Citing *Texas Oil and Gas Corp. v. Phillips Petroleum Co.,* 406 F.2d 1303 (10th Cir.1969), aff. 277 F.Supp. 366 (W.D.Okl.1967), *cert. denied* 396 U.S. 829, 90 S.Ct. 80, 24 L.Ed.2d 80 (1969); and Kuntz, LAW OF OIL AND GAS, Vol. 5, § 70.3 (1979).

3. Citing *Kardokus v. Walsh,* 797 P.2d 322, 326 (Okl.1990). The Government also advanced alternative theories of recovery including unjust enrichment, citing *Pan American Petroleum Corp. v. Candelaria,* 403 F.2d 351 (10th Cir. 1968); and trespass or conversion, citing *Barnes v. Winona Oil Co.,* 200 P. 985 (Okl.1921), and *Mason v. United States,* 260 U.S. 545, 43 S.Ct. 200, 67 L.Ed. 396 (1923) as codified in 43 C.F.R. § 9230 *et seq.*

gas mineral interests in the unit.[4] The drilling and spacing unit order operated to apportion production from the total unit acreage proportionately among the owners of all tracts within the unit. *Ward v. Corporation Commission*, 501 P.2d 503 (Okl. 1972); *Kirkpatrick Oil & Gas Co. v. United States*, 675 F.2d 1122 (10th Cir.1982). In *Kirkpatrick*, the 10th Circuit noted that the United States has the discretion to approve modifications to federal mineral leases or unit plans. *Id.* at 1125.

The approval given by the United States allowed the Corporation Commission drilling and spacing unit order to apply to all the federal mineral property in the unit. *Texas Oil and Gas Corp. v. Phillips Petroleum Co.*, 406 F.2d 1303 (10th Cir.1969), aff. 277 F.Supp. 366 (W.D.Okl.1967), *cert. denied*, 396 U.S. 829, 90 S.Ct. 80, 24 L.Ed.2d 80 (1969). Since, the United States has ratified this drilling and spacing unit order, it follows that the communitization of the unit has also been ratified. *Woodruff v. Woodruff*, 206 Okl. 3, 240 P.2d 74, 78 (1952). The Court finds that under existing law, the communitization has retroactive effect. *See Kardokus v. Walsh*, 797 P.2d 322, 326 (Okl.1990).

Accordingly, the Court affirms its prior orders denying Ward's Motion For Summary Judgment and granting the United States' and Shearn's Cross–Motions For Summary Judgment against Ward. The Court affirms its legal finding that communitization has occurred with retroactive effect, entitling the federal mineral property interest owners to share in the proceeds of the unit well from the date of first production. *See* the Bureau of Land Management District Manager's letter of ratification; *Ward v. Corporation Commission*, 501 P.2d 503 (Okl.1972); *Kirkpatrick Oil & Gas Co. v. United States*, 675 F.2d 1122 (10th Cir.1982); *Woodruff v. Woodruff*,

206 Okl. 3, 240 P.2d 74 (1952); *Kardokus v. Walsh*, 797 P.2d 322, 326 (Okl.1990).

The court affirms its prior order that Shearn and the United States have and recover judgment against Ward for the federal mineral property's proportionate share in the proceeds of the unit well, and for Ward to make a full accounting to Shearn and the United States of all oil and gas production, sales and sales proceeds, and costs of drilling, completing and operating the unit well.

## PREJUDGMENT INTEREST ON LATE PRODUCTION PAYMENTS

The United States moved for summary judgment for prejudgment interest on Ward's late production payments from the unit well. The United States contended that it is entitled to prejudgment interest as an element of just compensation where money has been wrongfully withheld [5]; that where late payments are due to the United States, the rate of interest is discretionary with the court [6]; and that Title 52, Oklahoma Statutes, Section 540 provides for accrual of interest where an operator violates the statutory duty to pay oil and gas production proceeds to those legally entitled to such payments.

Ward contended that the interest would not accrue on the production proceeds until the United States was "legally entitled" to the production proceeds which would not occur until judgment was entered determining the United State's interest in the unit well.

It is not in dispute that the United States is the sole owner of the federal mineral interests in the unit well subject to the effective date of Shearn's lease and the Court has found that both Shearn and the United States are entitled to recover from Ward the federal mineral property's pro-

---

**4.** The combining of separate oil and gas interests into a co-tenancy sharing production in a spacing and drilling unit can be referred to as "unitization" in the state law context, and as "communitization" where Federal mineral properties are being unitized with nonfederal properties. 43 C.F.R. § 3105.2–2.

**5.** Citing *Davis Cattle Co., Inc. v. Great Western Sugar Co.*, 544 F.2d 436, 441 (10th Cir.1976), *cert. den.* 429 U.S. 1094, 97 S.Ct. 1109, 51 L.Ed.2d 541 (1977).

**6.** Citing *Continental Oil Co. v. United States*, 184 F.2d 802 (9th Cir.1950) and *Amoco Production Co. v. United States*, 663 F.Supp. 998 (D.Utah 1987).

portionate share of the oil and gas production proceeds from the unit well from the date of first production.

Title 52 O.S. § 540(A) provides that proceeds derived from any oil and gas well will be paid to the unit owner. Section 540(D) provides that any unpaid proceeds will be paid with interest at the rate of twelve (12) percent per annum to be compounded annually from the date of the first sale. Ward has never paid the United States or their lessee for any of the unit well proceeds; therefore, the Court finds that Ward is liable to the United States and Shearn for the unpaid amount of the proceeds together with interest calculated in accordance with this statute.

The Court affirms its prior order granting the United States' Motion For Summary Judgment on the issue of prejudgment interest.

## THE EFFECTIVE DATE OF SHEARN'S LEASE

■ The United States moved for summary judgment against Shearn requesting that all right, title and interest of Shearn in the unit well be found to have commenced on April 1, 1990, the effective date stated in the lease, and that Shearn be found to have no entitlement to production proceeds from the unit well prior to this date.

Shearn responded by claiming that the United States was only entitled to royalty interest income on the unit well from the date of first production.

The following facts are not in dispute.

(1) The United States has, at all relevant times, owned the mineral interests in the unit well.

(2) In August of 1983, the United States placed the land covering the unit well up for competitive lease.

(3) Shearn filed a bid, and on November 22, 1983, the United States rejected Shearn's bid.

(4) On December 27, 1983, Shearn filed an administrative Notice of Appeal from that rejection, and on September 22, 1989, the rejection was vacated and remanded.

(5) On March 25, 1984, Ward commenced drilling the unit well, and on July 25, 1984, the unit well began producing.

(6) On March 1, 1990, the United States executed a lease in favor of Michael Shearn that expressly stated that it was effective April 1, 1990.

Shearn claims that the United States' November 22, 1983, rejection of his bid was wrongful, and that Shearn's lease should be retroactively applied to the date of Ward's first production. Upon review of the briefs and arguments presented, the Court finds that Shearn acquired no rights in the unit well until the lease was issued. *Schraier v. Hickel*, 419 F.2d 663, 667 (D.C.Cir.1969); *Duesung v. Udall*, 350 F.2d 748 (D.C.Cir.1965), *cert. denied* 383 U.S. 912, 86 S.Ct. 888, 15 L.Ed.2d 667 (1966). The lease is clear and express, specifically providing that the effective date is April 1, 1990. No equitable argument can defeat the undisputed facts. *Office of Personnel Management v. Richmond*, 496 U.S. 414, 110 S.Ct. 2465, 2473, 110 L.Ed.2d 387 (1990); *Trapper Mining, Inc. v. Lujan*, 923 F.2d 774, 781 (10th Cir.1991); *Sweeten v. U.S. Dept. of Agriculture*, 684 F.2d 679, 682 (10th Cir.1982); *Atlantic Richfield Co. v. Hickel*, 432 F.2d 587 (10th Cir.1970). The effective date of the Shearn–United States lease is hereby found to be April 1, 1990. This finding entitles Shearn to production proceeds from the unit well only after April 1, 1990.

The Court affirms its prior order granting the United States' Motion For Summary Judgment against Shearn.

## OBLIGATION TO PAY UNIT WELL PRODUCTION COSTS

Ward and the United States each argued that the other should bear the unit well production costs. Ward alleged that it is entitled to deduct costs from Shearn's and the United States' proportionate share of production proceeds. Alternatively, the United States and Shearn claimed that Ward should be denied costs because Ward's trespass or conversion of production proceeds was both willful and in bad

faith.[7] The Court has reviewed the applicable legal authority, the circuitous briefs, and the exhibits presented in support of and in opposition to each party's motion. Based on this review, the Court found that Ward's disputed bad faith *vel non* is a genuine issue of material fact, making summary judgment inappropriate. Both Ward's and the United States' Motions For Summary Judgment on the issue of liability for well production costs were thereby denied.

The Court makes no factual findings as to Ward's disputed bad faith since the legal issue of deductibility of well costs was withdrawn from further court consideration by stipulation of the parties.

## POST JUDGMENT INTEREST AND ATTORNEY'S FEES

The United States moves for determination of Ward's liability for post judgment interest and attorney's fees and costs. The Court finds the United States is entitled to attorney fees and costs as the prevailing party as provided in 52 O.S. § 540 E, and to post judgment interest at the statutory rate as provided in 28 U.S.C. § 1961 and App.Rule 37.

The ordered accounting having been submitted by Ward and the amounts of damages having been agreed to by the parties, the Court finds that:

(1) Co-defendant, the United States of America, is entitled to recover judgment against Co-defendant, Ward Petroleum Corporation, in the amount of $3,046,-479.29, which sum includes the proceeds from 8/8ths production attributable to the United States' interest in the unit well from the date of first production to March 31, 1990, less the costs incurred by Ward in the drilling, completing, equipping and operating of the Well attributable to the United States' interest, with prejudgment interest calculated on said amount pursuant to 52 O.S. § 540 at the rate of 12% per annum to

be compounded annually, calculated from the date of first sale to April 30, 1992.

(2) Co-defendant, United States of America, is entitled to recover judgment against Co-defendant, Ward Petroleum Corporation, in the amount of $31,369.77, which sum includes the proceeds from production attributable to the royalty interest of the Government from April 1, 1990 to April 30, 1992, with prejudgment interest calculated on said amount pursuant to 52 O.S. § 540 at the rate of 12% per annum to be compounded annually, calculated from the date of first sale to April 30, 1992.

(3) Co-defendant, United States of America, is entitled to recover judgment against Co-defendant, Ward Petroleum Corporation, in the amount of $5,000.00, which sum includes reasonable attorney fees and costs incurred by the United States as the prevailing party in this action; and

(4) Plaintiff, Michael Shearn, is entitled to recover against Co-defendant, Ward Petroleum Corporation, the amount of $181,-999.92, which sum includes the proceeds from production attributable to Shearn's lessee interest in the unit well from April 1, 1990 to April 30, 1992, less the costs incurred by Ward in the drilling, completing, equipping and operating of the Well attributable to Shearn's interest, with prejudgment interest calculated on said amount pursuant to 52 O.S. § 540 at the rate of 12% per annum to be compounded annually, calculated from the date of first sale to April 30, 1992.

(5) From and after April 30, 1992, the United States and Shearn, and their respective successor owners of interests in the federal mineral property, are entitled to share in oil and gas production from the unit well, the Laubhan–Friesen No. 1–32 in Section 32–13N–12W, Blaine County, Oklahoma, and to receive from Ward or its successor operator of the unit well, production proceeds in the proportion that the

---

7. Citing 43 C.F.R. § 9239.0–8 and .5–2; *United States v. Wyoming,* 331 U.S. 440, 458, 67 S.Ct. 1319, 1328, 91 L.Ed. 1590, *rehearing den.* 332 U.S. 787, 68 S.Ct. 37, 92 L.Ed. 370 (1947); *Pan American Petroleum Corp. v. Candelaria,* 403 F.2d 351 (10th Cir.1968); *Barnes v. Winona Oil*

*Co.,* 83 Okl. 253, 200 P. 985 (1921); *Zelma Oil Co. v. Nemo Oil Co.,* 84 Okl. 217, 203 P. 203 (1922); *Texas Co. v. Petit,* 107 Okl. 243, 220 P. 956 (1923); and *Dilworth v. Fortier,* 405 P.2d 38, 47 (Okl.1965).

surface acreage of the federal mineral property bears to the total 640 acre unit.

Final Judgment shall be entered accordingly.

It is so ordered.